FAYER GIPSON LLP
ELLIOT B. GIPSON (State Bar. No. 234020)
EGipson@fayergipson.com
STEVEN G. EDWARDS (State Bar No. 304165)
SEdwards@fayergipson.com
2029 Century Park East, Suite 3535
Los Angeles, California 90067
Telephone: 310.557.3558
Facsimile:  310.557.3589

Attorneys for Plaintiff
Jeffery R. Werner

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| JEFFERY R. WERNER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>BARCROFT MEDIA, LTD, a United Kingdom Limited Company; VALNET INC., a Canadian corporation; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. 2:17-CV-02644<br><br>**COMPLAINT FOR: 1) DIRECT COPYRIGHT INFRINGEMENT; 2) CONTRIBUTORY COPYRIGHT INFRINGEMENT; AND 3) VICARIOUS COPYRIGHT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

FAYER GIPSON LLP

**COMPLAINT**

**COMPLAINT**

Plaintiff Jeffery R. Werner ("Werner" or "Plaintiff") alleges, on information and belief, as follows:

**NATURE OF THE ACTION**

1.     Plaintiff brings this complaint for direct, contributory and vicarious copyright infringement against defendants Barcroft Media, Ltd. ("Barcroft"), and Valnet, Inc. ("Valnet") (collectively, "Defendants") as indicated herein under the copyright laws of the United States, 17 U.S.C. § 101, *et seq*., requesting actual and statutory damages stemming from Defendants' for-profit, unauthorized licensing and exploitation of Plaintiff's copyrighted photographs through business partners in the United States, including Defendant Valnet's website "The Richest" located at therichest.com and its YouTube.com channel located at https://www.youtube.com/channel/UCdxi8d8qRsRyUi2ERYjYb-w (collectively, "theRICHEST").

2.     Plaintiff is a highly acclaimed photographer who, over the past three decades, has built a successful career out of carefully investigating and researching unique and often dangerous subjects to photograph.  The uniqueness of Plaintiff's portfolio has resulted in substantial licensing opportunities throughout the years, and Plaintiff relies on income from these licensing opportunities for both his living and to research and fund future photo shoots.

3.     Defendant Valnet owns and operates the website theRICHEST, generating web traffic in excess of fifteen (15) million views per month primarily through exploiting photo and video content gathered from across the Internet by Defendants' employees and users of theRICHEST.  Defendant Valnet also owns and operates a YouTube channel, generating millions of views through exploiting photo and video content gathered from across the Internet by Defendants' employees and users of theRICHEST's YouTube channel.  TheRICHEST's YouTube channel has more than seven million (7,000,000) subscribers.

1
**COMPLAINT**

4.      Defendant Valnet also owns and operates the website theTALKO, generating web traffic in excess of one million views per month primarily through exploiting photo and video content gathered from across the Internet by Defendants' employees and users of theTALKO.  Defendant Valnet also owns and operates a YouTube channel for theTALKO which generates views through exploiting photo and video content gathered from across the Internet by Defendants' employees and users of theTALKO's YouTube channel.  TheTALKO's YouTube channel has more than two and a half million (2,500,000) followers.

5.      Without Plaintiff's authorization, Defendants have copied and distributed photographs from no fewer than eight (8) separate stories, registered in nine (9) separate registrations, and caused Plaintiff's photographs to be posted to theRICHEST's websites and affiliated YouTube channel.  Also without Plaintiff's authorization, Defendants have copied, distributed and caused photographs from no fewer than three (3) of those stories to be posted to theTALKO's website and affiliated YouTube channel.  Defendants' continuing acts of infringement began in early 2015 and can still be viewed on theRICHEST, theTALKO and their related YouTube channels today.

6.      Defendants' conduct has caused and continues to cause enormous and irreparable harm to Plaintiff, and Plaintiff must be compensated for Defendants' willful acts of infringement and Defendants must be ordered to cease and permanently desist from their infringing activities.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. § 501(a).

8.      This Court has personal jurisdiction over Defendants, and venue is proper in the Central District of California pursuant to 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(a), because Defendants may be found and conduct business in this District, and the acts of infringement complained of herein caused injury in this

**COMPLAINT**

FAYER GIPSON LLP

District.  Barcroft, through its CEO Sam Barcroft, knew that Plaintiff was a resident of the Central District of California and knew that any copyright infringement against Plaintiff would cause harm to Plaintiff in the Central District of California.

## THE PARTIES

9.    Plaintiff Jeffery Werner is an individual who resides in Los Angeles, California, and is the owner of the copyrights to the photographs that are the subject of this action.

10.    Defendant Barcroft Media, Ltd. ("Barcroft") is a United Kingdom Limited company with offices in New York, London, and New Delhi.  Barcroft conducts business in the United States from its New York offices located at 231 Front St, Suite 301, Brooklyn, New York 11201.  Barcroft has purposefully availed itself of the protections of the intellectual property laws of the United States by, among other things, registering the following group registrations of the "Barcroft Media Database" works with the United States Copyright Office:  VA0001998539; VA0001947718; VA0001998535; VA0001998550; VA0001998536; VA0001971326; VA0002014350; VA0001960297; and VA0001998533.  Barcroft supplies copyrighted images and videos, among other things, to media clients around the world.  On or about December 30, 2015, Barcroft signed a licensing deal with Defendant Valnet, Inc., granting Valnet access to Barcroft's imagery and video content for use across their various media brands.  Barcroft regularly conducts business in the Central District in Los Angeles.  Moreover, Barcroft knew that Plaintiff was a resident of the Central District of California and knew that any copyright infringement against Plaintiff would cause harm to Plaintiff in the Central District of California.

11.    Defendant Valnet, Inc. ("Valnet") is a Canadian corporation with offices in Quebec, Canada and a branch office in Los Angeles, California.  Valnet distributes content, including content received from Barcroft, through internet websites, YouTube and other social media channels to some 45 million unique users, 33 million of which are within the United States.  In 2016, Valnet, Inc. created a Delaware corporation

**COMPLAINT**

FAYER GIPSON LLP

FAYER GIPSON LLP

entitled Valnet Media USA Inc. through which it conducts business in the United States.  That company registered to conduct business in the State of California in April 2016.  Valnet Media USA Inc., in its Statement of Information filed with the State of California, states that it is a "collection agent."  Valnet Media USA Inc.'s President is David Felicissimo, the General Counsel of Valnet, Inc.  At all relevant times, Valnet, Inc. has conducted business in California by itself, or through Valnet Media USA Inc., its collection agent and alter ego, and at all relevant times Valnet, Inc. is and has been responsible for the conduct of Valnet Media USA Inc., including the infringing conduct described herein.  Valnet has purposefully availed itself of the benefits of United States intellectual property laws by registering a DMCA agent with the copyright office, registering a copyright assignment with the United States Copyright Office, and registering trademarks with the United States Patent and Trademark Office (the "USPTO").  Valnet registered the following assignment with the United States Copyright Office: "Baby Gaga & 3 other titles" recorded as document number V3623D660.  Valent has registered the following marks with the USPTO: CBR, registration number 86549155; SCREEN RANT, registration number 86555210; THERICHEST, registration number 86146652; and BABY GAGA, registration number 77177258.  In addition, Valnet conducts business in the Central District of California through its offices in Los Angeles, California that it acquired in April 2016 when it acquired Comic Book Resources ("CBR") and its website comicbookresources.com.  *See* Valnet blog at http://www.valnetinc.com/blog/April-2016.  CBR's offices are located in the Central District at 5240 Lankershim Blvd., Suite 210 North Hollywood, California 91601.  Further, Valnet regularly uses YouTube Space LA to produce videos as its "content creation lab."  *See* Valnet blog at http://www.valnetinc.com/blog/May-2016.

12.    The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants sued herein as DOES 1-10, inclusive, are unknown at the present time and Plaintiff therefore sues said DOES and each of them by such

fictitious names.   If necessary, Plaintiff will seek leave of court to amend this complaint to allege their true names and capacities when they are ascertained.

13.     Unless otherwise indicated herein, on information and belief, each of DOES 1-10, inclusive, participated in the activities described herein and rendered material assistance to the other Defendants in the actions alleged herein, conspired and agreed with and aided and abetted one or more of the other Defendants and at all relevant times each of the Defendants was the principal or agent, partner, independent contractor, loan-out company, servant and/or employee of at least one other of the other Defendants and all of the acts performed by them or omissions alleged herein were made in the course and scope of their employment, agency, partnership or other such relationship and with knowledge, consent, approval and/or ratification of the principals and each of them.   Unless otherwise indicated herein, each of the parties herein named as DOES 1-10 is responsible in some manner or fashion and is liable and responsible on the facts alleged herein for all the relief sought.   Defendants are jointly and severally liable for all acts of infringement described herein.

## **GENERAL ALLEGATIONS**

14.     Plaintiff Jeffery Werner is a renowned photographer who resides in Los Angeles, California.   In a career spanning over four decades, Plaintiff has traveled across the United States and to sixty-five (65) different countries developing a portfolio of work that covers a wide range of unique, and oftentimes dangerous, subjects ranging from death-defying stunt photography to seemingly-ordinary subjects in amazing and extraordinary circumstances.

15.     The unique nature of Plaintiff's work and the intense interest that it garners has led to tremendous licensing opportunities.   Plaintiff's very first stunt feature appeared in *People* magazine, and he has secured over one hundred double-page spreads in the *National Enquirer*.   His work has been licensed to leading periodicals such as *Time, Newsweek, Scholastic Magazine, Maxim, FHM, Marie Claire, In Touch Weekly, Daily Mail, French Photo, Playboy, Penthouse, Life,*

*Smithsonian, Psychology Today,* the *National Examiner*, and the *New York Post*.

16.     Plaintiff relies on income generated from licensing his photographs for his living.  Plaintiff employs a staff dedicated to researching new opportunities for photo shoots, as well as managing, monetizing, and policing the intellectual property of Plaintiff's portfolio.

### Agreement to License Photographs in the United Kingdom

17.     In or about October 2004, Sam Barcroft contacted Plaintiff via e-mail and proposed a deal whereby BARCROFT would become Plaintiff's "specialist features agent" in the United Kingdom.  Shortly thereafter, Plaintiff reached an agreement with BARCROFT whereby BARCROFT would have permission to license and distribute Plaintiff's photographs within the United Kingdom only.  As part of this agreement, if BARCROFT wanted permission to license or distribute Plaintiff's photographs outside of the United Kingdom, it would need to reach a separate agreement with Plaintiff on a case-by-case basis before obtaining the rights to do so.   Where Plaintiff's stories were syndicated in the United Kingdom, or where Plaintiff provided special permission to syndicate in other markets, Plaintiff was to receive sixty percent (60%) of the proceeds.  As an additional aspect of this agreement, Sam Barcroft and his editors gave Plaintiff assignments in which the parties shared expenses and proceeds, each at fifty percent (50%).  Plaintiff's stories under this aspect of the agreement were for worldwide distribution.  None of Plaintiff's stories under this aspect of the parties' agreement are at issue in this Complaint.  This aspect of the agreement did not include back-licenses, permission to settle copyright infringements or unauthorized use, or any other special permissions.

18.     Further to the agreement, BARCROFT provided Plaintiff with "self-billing tax invoices," reflecting licenses granted to distribute Plaintiff's photographs and the commission charged for each license.  A true and correct copy of a sample Self Billing Tax Invoice sent from Barcroft to Plaintiff, dated April 30, 2016, is attached hereto as Exhibit 1.

FAYER GIPSON LLP

**COMPLAINT**

19. Importantly, in late 2013 Plaintiff met with BARCROFT and Brian Wolff, a licensing agent for Plaintiff and Incredible Features, Inc., a company owned by Plaintiff, to discuss industry-wide problems with intellectual property theft. BARCROFT's response implied that he was too busy "building his brand" to protect Plaintiffs rights and licenses under the parties' agreement. BARCROFT asked at the time if Plaintiff had any experience collecting from the Canadian Broadcasting Corporation. It was during this conversation that BARCROFT was expressly informed that any alleged infringements of Plaintiff's work would be handled by Incredible Features, Inc. directly, without input from BARCROFT.

20. Upon information and belief, sometime in 2015, BARCROFT noticed that VALNET was using certain of Plaintiff's photographs without Plaintiff's permission or authorization and approached VALNET to offer to enter into a retroactive license with VALNET for such works. Alternatively, VALNET approached BARCROFT to attempt to gain purported permission to use Plaintiff's photographs. Either way, BARCROFT never informed Plaintiff of this infringement or of its intent to enter into a retroactive license with VALNET concerning any of Plaintiff's works. Plaintiff never approved or authorized such an agreement and Plaintiff never gave BARCROFT permission to enter into any agreements with any third parties for so-called retroactive licenses.

21. Upon information and belief, in or about December 2015, BARCROFT reached an agreement with VALNET to distribute imagery and video content from BARCROFT to VALNET's various media brands, including the rights to license or distribute photographic content obtained from BARCROFT via VALNET websites and social media channels in Canada and the United States. Plaintiff never approved or authorized such an agreement. Upon information and belief, Mr. Barcroft and/or his agents negotiated the agreement and knew he did not have permission from Plaintiff to enter into such agreement at the time that he entered into it with VALNET. Upon information and belief, Mr. Barcroft and/or his agents were the active,

7

**COMPLAINT**

conscious, and moving force behind all of the infringements described herein.

22.     On June 17, 2016, Plaintiff informed BARCROFT of its discovery of the unauthorized use of his photographs by VALNET.  BARCROFT, however, refused to speak with Plaintiff's representative telephonically.   Plaintiff also proposed that BARCROFT communicate with Brian Wolff, his representative, but BARCROFT never responded.   BARCROFT never responded to the substance of Plaintiff's allegations in writing in the June 17, 2016 email.  Instead, Barcroft, through its CEO Sam Barcroft, drafted a short email expressing surprise and attempted to arrange a phone call that never occurred.

### Plaintiff's World's Smallest Mom Photographs

23.     In May 2009, Plaintiff and his staff negotiated a contract with Stacey Herald, a two-foot and four-inch tall woman pregnant with her third child, for the worldwide exclusive right to photograph, video-record, and provide editorial press coverage over Ms. Herald's pregnancy, childbirth, and convalescence.  Unsatisfied with the way the media had handled coverage of her previous pregnancies, Ms. Herald insisted that Plaintiff be the only person allowed to photograph and document her story.   Ms. Herald's selection of Plaintiff was the result of Plaintiff and his staff investing in and cultivating a relationship with Ms. Herald over the course of a year.

24.     In the fall of 2009, Plaintiff traveled to Ms. Herald's home in Dry Ridge, Kentucky, and conducted a 2-day photo shoot of Ms. Herald and her family at her home and at her hospital in Cincinnati.  The preparation for, travel to, and production of the photo shoot were done at Plaintiff's own expense.  The photo shoot resulted in a collection of photographs featuring Ms. Herald (the "World's Smallest Mom Photographs").

25.     The unique and exclusive nature of the World's Smallest Mom Photographs generated intense interest and lucrative licensing opportunities for Plaintiff, who licensed them worldwide to media outlets such as *Inside Edition*, *E! Entertainment*, *Allers Magazine* in Norway, and *Bilde* in Stockholm.

**COMPLAINT**

26.    The World's Smallest Mom Photographs were registered with the U.S. Copyright Office, Registration No. VAu 1-012-243, effective October 29, 2009, as part of the collection titled "Jeff Werner Late Summer Early Fall 2009."  A true and correct copy of the related certificate is attached hereto as Exhibit 2.

27.    A second set of the photographs of the World's Smallest Mom was registered with the U.S. Copyright Office, Registration No. VAu-1-028-944, effective June 7, 2010, as part of the collection titled "Small Mom Homecoming."  A true and correct copy of the related certificate is attached hereto as Exhibit 3.

28.    As an experiment to see how BARCROFT performed as a licensing agent, Plaintiff entered into an oral agreement with BARCROFT in which BARCROFT was permitted to license the World's Smallest Mom Photographs world-wide.  As part of their original agreement, BARCROFT placed the World's Smallest Mom Photographs in various United Kingdom publications, including *The London Sun*, *The Daily Telegraph*, *The Daily Mail*, and *Closer Magazine*.  Plaintiff, however, never authorized BARCROFT to license the World Smallest Mom Photographs to any infringers – all of whom were to be reported to Plaintiff to be dealt with by Plaintiff at a time and manner of Plaintiff's choosing.

### *Plaintiff's Giant George Photographs*

29.    On or about November 4, 2009, Plaintiff conducted a photo shoot of Giant George, a seven-foot long Great Dane who at the time was being discussed as a contender for the title of "World's Tallest Dog," bestowed by the Guinness Book of World Records.  Plaintiff and his staff researched, contacted and negotiated the terms of the photo shoot with Giant George's owner, and traveled to Tucson, Arizona for the photo shoot all at Plaintiff's expense.  The photo shoot resulted in a collection of photographs featuring Giant George (the "Giant George Photographs").

30.    Interest in the Giant George Photographs exploded, resulting in lucrative licensing opportunities for Plaintiff.   BARCROFT, with Plaintiff's permission, licensed the Giant George Photographs to *The Daily Mail* and other outlets, in the

**COMPLAINT**

FAYER GIPSON LLP

United Kingdom.  Plaintiff, independent of the BARCROFT agreement, licensed the photographs outside of the United Kingdom to *The Oprah Show*, *Maxim Magazine*, *National Geographic Reader*, *In Touch Weekly*, *the National Examiner*, *QUO Magazine* in Spain, and *30 Millions d'Amis*, Europe's premier animal magazine.  In early February 2010, Giant George was declared by the Guinness Book of World Records as the world's tallest dog, resulting in renewed interest and further licensing opportunities for Plaintiff.

31.    The Giant George Photographs were registered with the U.S. Copyright Office, Registration No. VAu 1-005-177, effective as of November 11. 2009.  A true and correct copy of the related certificate is attached hereto as Exhibit 4.

### Plaintiff's Amazon Eve Photographs

32.    In or about 2010, Plaintiff conducted a photo shoot of Amazon Eve (Erika Ervin), a unique fashion model.  Plaintiff and his staff researched, contacted and negotiated the terms of the photo shoot with Ms. Eve.  Plaintiff's staff included a make-up artist and two assistants – all paid for at Plaintiff's expense.  The photo shoot resulted in a collection of photographs featuring Amazon Eve (the "Amazon Eve Photographs").

33.    Interest in the Amazon Eve Photographs resulted in significant licensing opportunities for Plaintiff.  Plaintiff thereafter licensed the Amazon Eve Photographs to such media outlets.  Subsequent to the photo shoot, Amazon Eve was crowned the World's Tallest Professional Model by Guinness World Records and appeared in Harper's Bazaar, in addition to appearing in film and television roles including *Family Tools*, *Hemlock Grove*, and *American Horror Story: Freak Show*.

34.    The Amazon Eve Photographs were registered with the U.S. Copyright Office, Registration No. VAu 1-045-923, effective as of October 25, 2010.  A true and correct copy of the related certificate is attached hereto as Exhibit 5.

### Plaintiff's Snuggery Photographs

35.    In or about August 2012, Plaintiff's staff discovered a story on a woman

**COMPLAINT**

FAYER GIPSON LLP

in Rochester, New York who had started a unique new business: cuddling clients. This new business was named "The Snuggery."  Plaintiff and his staff negotiated a contract with The Snuggery that gave Plaintiff the right to an exclusive photo shoot and exclusive rights to exploit images of the The Snuggery for a period of time.  In September 2012, Plaintiff flew to Rochester and at his own expense, held a photoshoot at The Snuggery along with his staff, hired models, and make-up artists. The photo shoot resulted in a collection of photographs about The Snuggery (the "The Snuggery Photographs").

36.    Much like the Giant George Photographs, the unique nature of The Snuggery Photographs generated considerable interest and led to significant licensing revenue for Plaintiff.   The Snuggery Photographs were properly licensed by BARCROFT to media outlets in the United Kingdom such as *The Sun, The Daily Mail,* and *AOL.*  Plaintiff, independent of the BARCROFT agreement, licensed the stories to magazines, newspapers and TV outlets around the world, including *Inside Edition, In Touch Magazine*, *the National Examiner,* and *ABC News*.

37.    The Snuggery Photographs were registered with the U.S. Copyright Office, Registration No. VAu 1-119-467, effective as of October 25, 2012.  A true and correct copy of the related certificate is attached hereto as Exhibit 6.

### *Plaintiff's Photographs of Amputee Bodybuilder Barb Guerra*

38.    In or about late 2013 or early 2014, Plaintiff conducted photo shoots of Barb Guerra, a double-amputee and bodybuilder, at her home in Phoenix, Arizona and a professional bodybuilders competition in South Carolina.  Plaintiff and his staff researched, contacted and negotiated the terms of the photo shoot with Ms. Guerra, and traveled for the photo shoot all at Plaintiff's expense.  The photo shoot resulted in a collection of photographs featuring Ms. Guerra (the "Barb Guerra Photographs").

39.    Interest in Barb Guerra Photographs was significant and led to significant licensing revenue for Plaintiff.   Specifically, Plaintiff licensed the Barb Guerra photographs to such media outlets.

**COMPLAINT**

40.   The Barb Guerra Photographs were registered with the U.S. Copyright Office, Registration No. VAu 1-157-621, effective as of January 24, 2014.  A true and correct copy of the related certificate is attached hereto as Exhibit 7.

### Plaintiff's Photographs of Miss Iowa Nicole Kelly

41.   Plaintiff conducted a photo shoot of Miss Iowa Nicole Kelly, a beauty pageant winner who was born without her left forearm.   Plaintiff and his staff researched, contacted and negotiated the terms of the photo shoot with Ms. Kelly all at Plaintiff's expense.   The photo shoot resulted in a collection of photographs featuring Ms. Kelly (the "Nicole Kelly Photographs").  To conduct the photo shoot, Plaintiff traveled to Iowa, conducted research, and hired makeup artists and assistants to help with the shoot.

42.   The unique nature of the story and photographs resulted in tremendous licensing opportunities for Plaintiff.   As such, Plaintiff licensed the Nicole Kelly Photographs to media outlets.

43.   The Nicole Kelly Photographs were registered with the U.S. Copyright Office, Registration No. VAu 1-157-620, effective as of February 10, 2014.  A true and correct copy of the related certificate is attached hereto as Exhibit 8.

### Plaintiff's Photographs of "Wild Thing" The Bison

44.   Plaintiff conducted a photo shoot of "Wild Thing" a 2100-pound bison living with its Texas owners, and the second such bison purchased by that family called Bullett.  Plaintiff and his staff researched, contacted, and negotiated the terms of the photo shoot with Wild Thing's owners, and traveled to Quinlan, Texas for the photo shoot all at Plaintiff's expense.   The photo shoot resulted in a collection of photographs featuring Wild Thing and its owners (the "Wild Thing Photographs").

45.   Interest in the story created significant licensing opportunities for Plaintiff.  As such Plaintiff licensed the Wild Thing Photographs to media outlets.

46.   The Wild Thing Photographs were registered with the U.S. Copyright Office, Registration No. VA 1-915-275, effective as of May 16, 2014.  A true and

**COMPLAINT**

FAYER GIPSON LLP

correct copy of the related certificate is attached hereto as Exhibit 9.

### Plaintiff's Conjoined Twins Photographs

47.    On or about February 26, 2008, Plaintiff conducted a photo shoot of Lori and George Schappell, conjoined twins joined at the head.  Plaintiff and his staff researched, contacted and negotiated the terms of the photo shoot with their agent Chuck Harris.  In doing so, Plaintiff hired an assistant and travelled to Reading, Pennsylvania for the shoot.  The photo shoot resulted in a collection of photographs featuring the Schappell's (the "Conjoined Twins Photographs").

48.    Interest in the story created significant licensing opportunities for Plaintiff, as the story was licensed to *Newlook Magazine* in France, as well as the television show *Born Different* (E! Entertainment).  The story was also licensed, and attracted attention, in Scandinavia.

49.    Plaintiff's Conjoined Twins Photographs were registered with the U.S. Copyright Office, Registration No. VAu-988-438, effective as of March 10, 2009, as part of the collection titled "Conjoined Twins – Elephant Bubble Record – JENNIFER MCGILL – Polyamorist Family – Taekwondo Grannies – Meth Addict Mom – Purdy Girl Skateboard Doggies."  A true and correct copy of the related certificate is attached hereto as Exhibit 10.

### Defendants' Infringement of Plaintiff's Photographs

50.    Defendant Valnet operates a website named "theRICHEST," located at www.therichest.com.  According to VALNET, therichest.com is one of the biggest online luxury and entertainment magazines with over 28 million visits per month and 150,000,000 monthly page views.  Seventy-five (75) percent of its traffic comes from the United States.  TheRICHEST focuses on list articles spanning pop culture and crazy facts from around the world.  TheRICHEST is also available as both Apple and Android apps.  TheRICHEST can easily be accessed in the United States through the world-wide web.

51.    Defendant Valent generates enormous traffic to theRICHEST website –

**COMPLAINT**

FAYER GIPSON LLP

in excess of 28 million visits per month and more than 30 million video views – primarily on the basis of photo and video content submitted by its users or found by its employees.

52. Defendant Valnet creates little of the photo and video content that drives traffic to theRICHEST, instead they compile photo and video content created by others into what they contend are original works.

53. TheRICHEST also maintains a "Contribution Program," through which contributors are paid for "writing" articles which are eventually posted on theRICHEST. Per theRICHEST, it is "the world's most exclusive & effective contribution program."

54. Defendant Valnet also operates a YouTube.com channel called "theRICHEST,' located at https://www.youtube.com/channel/UCdxi8d8qRsRyUi2ERYjYb-w. On the "About" page of YouTube channel, theRICHEST describes itself as "the best channel to binge watch on list videos about shocking, controversial, mysterious, funny, weird and mind-blowing facts. As of the filing of this Complaint, there were more than 7 million subscribers to theRICHEST's YouTube channel. TheRICHEST's YouTube channel can easily be accessed in the Central District of California through YouTube.com.

55. Defendant Valnet generates enormous traffic to its YouTube channel– primarily on the basis of photo and video content found by its employees. Much like theRICHEST itself, the massive volume of web traffic driven to its YouTube channel, as well as through theTALKO and its YouTube channel, has resulted in substantial financial rewards for Valnet.

56. At all relevant times, Mr. Barcroft was acting within the scope of and pursuant to his duties as an employee, owner and officer of Barcroft. Through its purported licensing deals with Valnet regarding Plaintiff's photographs in dispute here, Barcroft caused the reproduction and distribution of Plaintiff's Work without

Plaintiff's authorization in the Central District of California.

57.   Valnet reproduced, distributed, and publicly displayed Plaintiff's Work without Plaintiff's authorization in the Central District of California.

58.   On or about February 27, 2015, through its theRICHEST website, VALNET published an article and accompanying video titled "The 10 Oddest Mothers In The World," which contained several of Plaintiff's World's Smallest Mom Photographs.  As of July 7, 2016, theRICHEST's video containing at least four (4) of Plaintiff's World's Smallest Mom Photographs had 7,817,593 views on YouTube.com.  Nowhere in theRICHEST's article or video is Plaintiff credited as the photographer of the World's Smallest Mom Photographs.  This article and video are attributed only to "TheRichest."

59.   Defendants' unauthorized reproduction and distribution of the World's Smallest Mom Photographs has continued, uninterrupted, since they were posted to theRICHEST's website.

60.   On or about March 20, 2015, through its theRICHEST website, VALNET published an article titled "15 Of The Easiest And Best Paying Jobs in 2015," which contained several of Plaintiff's The Snuggery Photographs.  Nowhere in theRICHEST's article or video is Plaintiff credited as the photographer of The Snuggery Photographs.   The article accompanying this video was authored by Amanda Lauren.   Upon information and belief, Ms. Lauren lives in Los Angeles, California.

61.   At all relevant times, Ms. Lauren was acting within the scope of and pursuant to her duties as an employee or contributor to theRICHEST.  In 2015, through its theRICHEST YouTube channel, VALNET published a video titled "Strangest Jobs You've Never Heard Of," which contained several of Plaintiff's The Snuggery Photographs.  As of July 7, 2016, theRICHEST's video containing at least six (6) of Plaintiff's The Snuggery Photographs had 3,291,518 views on YouTube.com.  Nowhere in theRICHEST's article or video is Plaintiff credited as the

photographer of The Snuggery Photographs.

62.     Defendants' unauthorized reproduction and distribution of The Snuggery Photographs has continued, uninterrupted, since they were posted to theRICHEST's website.

63.     In 2015, through its theRICHEST YouTube channel, VALNET published a video titled "10 Most Unusual Pets Ever," which contained several of Plaintiff's Giant George Photographs.   As of July 7, 2016, theRICHEST's video containing Plaintiff's Giant George Photographs had 8,557,168 views on YouTube.com. Nowhere in theRICHEST's article or video is Plaintiff credited as the photographer of The Snuggery Photographs.  This video is attributed only to "TheRichest."

64.     In 2015, through its theRICHEST YouTube channel, VALNET published a video titled "The Biggest Dogs That Actually Exist," which also contains several of Plaintiff's Giant George Photographs.   As of July 7, 2016, that video containing Plaintiff's Giant George Photographs had 402,451 views on YouTube.com.   Nowhere in theRICHEST's article or video is Plaintiff credited as the photographer of The Snuggery Photographs.

65.     Defendants' unauthorized reproduction and distribution of The Giant George Photographs has continued, uninterrupted, since they were posted to theRICHEST's website.

66.     In 2015, through its theRICHEST website, VALNET published an article and accompanying video titled "10 Most Unusual Fashion Models," which contained several of Plaintiff's Amazon Eve photographs.   The accompanying article noted Amazon Eve's "memorable role" on the American Horror Story: Freak Show television program.   As of July 7, 2016, theRICHEST's video containing Plaintiff's Amazon Eve Photographs had 1,608,947 views on YouTube.com.   Nowhere in theRICHEST's article or video is Plaintiff credited as the photographer of the Amazon Eve Photographs.  The article and video are credited only to "TheRichest."

67.     In 2015, through its theRICHEST YouTube channel, VALNET published

a video titled "10 Women You Won't Believe Exist," which again contained several of Plaintiff's Amazon Eve photographs.  As of July 7, 2016, theRICHEST's video containing at least two (2) of Plaintiff's Amazon Eve Photographs had 7,174,726 views on YouTube.com.  Nowhere in theRICHEST's video is Plaintiff credited as the photographer of the Amazon Eve Photographs.  This video is also only credited to "TheRichest."

68.   Defendants' unauthorized reproduction and distribution of the Amazon Eve Photographs has continued, uninterrupted, since they were posted to theRICHEST's website.

69.   In 2015, through its theRICHEST YouTube channel, VALNET published a video titled "10 Most Unusual Bodybuilders in The World," which contained several of Plaintiff's Barb Guerra Photographs.  As of July 7, 2016, the video had 8,957,673 views on YouTube.  Nowhere in theRICHEST's video is Plaintiff credited as the photographer of the Barb Guerra Photographs.   This video is also attributed to "TheRichest."

70.   Defendants' unauthorized reproduction and distribution of The Barb Guerra Photographs has continued, uninterrupted, since they were posted to theRICHEST's website.

71.   In 2015, through its theRICHEST YouTube channel, VALNET published a video titled "Strange Beauty Pageants Around The World," which contained several of Plaintiff's Nicole Kelly Photographs.  As of July 7, 2016, the video had 257,018 views on YouTube.  Nowhere in theRICHEST's video is Plaintiff credited as the photographer of the Nicole Kelly Photographs.

72.   Defendants' unauthorized reproduction and distribution of the Nicole Kelly Photographs has continued, uninterrupted, since they were posted to theRICHEST's website through at least July 7, 2016.

73.   On or about May 6, 2016, through its theRICHEST YouTube channel, VALNET published a video titled "The Most Unusual Pets People Actually Own,"

**COMPLAINT**

which contains several of Plaintiff's Wild Thing Photographs.  As of July 7, 2016, the video containing Plaintiff's Wild Thing Photographs had 852,731 views on YouTube.com.   Nowhere in theRICHEST's video is Plaintiff credited as the photographer of the Nicole Kelly Photographs.  This video is similarly only attributed to "TheRichest."

74.   Defendants' unauthorized reproduction and distribution of the Wild Thing Photographs has continued, uninterrupted, since they were posted to theRICHEST's website.

75.   Plaintiff discovered Defendants' infringement of Plaintiff's Smallest Mom Photographs in or about late May 2015.

76.   Plaintiff discovered Defendants' infringement of Plaintiff's Giant George Photographs in or about late May 2015.

77.   Plaintiff discovered Defendants' infringement of Plaintiff's Amazon Eve Photographs in or about May 2015.

78.   Plaintiff discovered Defendants' infringement of Plaintiff's The Snuggery Photographs in or about May 2015.

79.   Plaintiff discovered Defendants' infringement of Plaintiff's Barb Guerra Photographs in or about late May 2015.

80.   Plaintiff discovered Defendants' infringement of Plaintiff's Nicole Kelly Photographs in or about May 2016.

81.   Plaintiff discovered Defendants' infringement of Plaintiff's Wild Thing Photographs in or about May 2016.

82.   Plaintiff discovered Defendants' infringement of Plaintiff's Conjoined Twins Photographs in or about May 2016.

83.   Valent's unauthorized reproduction and distribution of Plaintiff's copyrighted works was willful, intentional, and in reckless disregard of Plaintiff's rights in and to his copyrighted works.

84.   As a direct result of Defendants' acts and omissions, Plaintiff has

FAYER GIPSON LLP

suffered damages.  Defendants' acts and omissions have also devalued Plaintiff's works, by widely disseminating unauthorized copies of those works, while reaping substantial financial rewards on the basis of such stolen content.

## FIRST CLAIM FOR RELIEF

### (Direct Copyright Infringement, 17 U.S.C. § 501)

### Against Valnet

85.    Plaintiff repeats and realleges the allegations made in paragraphs 1 through 84 as if fully set forth herein.

86.    Plaintiff is the author and owner of the copyrights to the World's Smallest Mom Photographs, the Giant George Photographs, the Amazon Eve Photographs, the Snuggery Photographs, the Barb Guerra Photographs, the Nicole Kelly Photographs, the Wild Thing Photographs and the Conjoined Twins Photographs.  All of the works at issue in this action are the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights.

87.    Defendant Valnet has directly infringed Plaintiff's copyrights through the unauthorized reproduction, display, and distribution of the World's Smallest Mom Photographs, the Giant George Photographs, the Amazon Eve Photographs, the Snuggery Photographs, the Barb Guerra Photographs, the Nicole Kelly Photographs, the Wild Thing Photographs and the Conjoined Twins Photographs.

88.    Defendant Valnet's infringement was willful, intentional and purposeful, in disregard of and with indifference to Plaintiff's rights.

89.    As a direct and proximate result of said infringement by Valnet Plaintiff is entitled to damages in an amount to be proven at trial.

90.    Because Valnet's copyright infringement was willful, Plaintiff is entitled to statutory damages equal to $150,000 per work infringed.

91.    Plaintiff is further entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

**COMPLAINT**

FAYER GIPSON LLP

92.     Plaintiff is also entitled to Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504(b), including an accounting of and a constructive trust with respect to such profits.

93.     As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Plaintiff is informed and believes and on that basis avers that unless enjoined and restrained by this Court, Defendants may continue to infringe Plaintiff's rights in the World's Smallest Mom Photographs, the Giant George Photographs, the Amazon Eve Photographs, the Snuggery Photographs, the Barb Guerra Photographs, the Nicole Kelly Photographs, the Wild Thing Photographs and the Conjoined Twins Photographs.   Plaintiff is entitled to preliminary and permanent injunctive relief.

## SECOND CLAIM FOR RELIEF
### (Contributory Copyright Infringement)
### Against Barcroft

94.     Plaintiff repeats and realleges the allegations made in paragraphs 1 through 93 as if fully set forth herein.

95.     Plaintiff is the author and owner of the copyrights to the World's Smallest Mom Photographs, the Giant George Photographs, the Amazon Eve Photographs, the Snuggery Photographs, the Barb Guerra Photographs, the Nicole Kelly Photographs, the Wild Thing Photographs and the Conjoined Twins Photographs.   All of the works at issue in this action are the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights.

96.     Valnet has directly infringed Plaintiff's copyrights through the unauthorized reproduction, display, and distribution of the World's Smallest Mom Photographs, the Giant George Photographs, the Amazon Eve Photographs, the

FAYER GIPSON LLP

20
**COMPLAINT**

FAYER GIPSON LLP

Snuggery Photographs, the Barb Guerra Photographs, the Nicole Kelly Photographs, the Wild Thing Photographs and the Conjoined Twins Photographs.

97.   Valnet's infringement was and is willful, intentional and purposeful, in disregard of and with indifference to Plaintiff's rights.

98.   Barcroft knew of Valnet's infringing activity.   Instead of stopping the infringing activity, Barcroft enabled it by entering into a sham back-license with Valnet for Plaintiff's photographs at issue here, knowing that it was not authorized to license such photographs.

99.   Defendant Valnet provided the websites, media channels, and means for the above infringing activity to occur through theRICHEST and its affiliated YouTube channel, and encouraged their employees and representatives, including Ms. Lauren and others, to discover and post to theRICHEST and its affiliated YouTube channel content that was created by others.

100.   As a direct and proximate result of said infringement, Plaintiff is entitled to actual damages in an amount to be proven at trial.

101.   Because Defendant Barcroft's copyright infringement was willful, Plaintiff is entitled to statutory damages equal to $150,000 per work infringed.

102.   Plaintiff is further entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

103.   Plaintiff is also entitled to Barcroft's profits attributable to the infringement, pursuant to 17 U.S.C. § 504(b), including an accounting of and a constructive trust with respect to such profits.

104.   As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.   Plaintiff is informed and believes and on that basis avers that unless enjoined and restrained by this Court, Barcroft may continue to infringe Plaintiff's rights in the World's Smallest Mom Photographs, the Giant George Photographs, the Amazon Eve Photographs, the

Snuggery Photographs, the Barb Guerra Photographs, the Nicole Kelly Photographs, the Wild Thing Photographs and the Conjoined Twins Photographs.

## THIRD CLAIM FOR RELIEF
### (Vicarious Copyright Infringement)
### Against Barcroft

105.    Plaintiff repeats and realleges the allegations made in paragraphs 1 through 104 as if fully set forth herein.

106.    Plaintiff is the author and owner of the copyrights to the World's Smallest Mom Photographs, the Giant George Photographs, the Amazon Eve Photographs, the Snuggery Photographs, the Barb Guerra Photographs, the Nicole Kelly Photographs, the Wild Thing Photographs and the Conjoined Twins Photographs.  All of the works at issue in this action are the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights.

107.  Valnet has directly infringed Plaintiff's copyrights through the unauthorized reproduction, display, and distribution of the World's Smallest Mom Photographs, the Giant George Photographs, the Amazon Eve Photographs, the Snuggery Photographs, the Barb Guerra Photographs, the Nicole Kelly Photographs, the Wild Thing Photographs and the Conjoined Twins Photographs.

108.    Valnet's infringement was and is willful, intentional and purposeful, in disregard of and with indifference to Plaintiff's rights.

109.    Barcroft has the ability to oversee and control the infringing activity of Valnet, through its purported 2015 licensing agreement with Valnet, and also by their control of photographic and videographic property which Barcroft has been given permission to license and distribute within the United Kingdom.

110.    Barcroft received a direct financial benefit from the infringement in the form of advertising revenues derived from traffic driven to theRICHEST and theRICHEST's affiliated YouTube channel through the illicit use of Plaintiff's

**COMPLAINT**

copyrighted works, and have therefore vicariously infringed upon Plaintiff's copyrights.

111.   As a direct and proximate result of said infringement, Plaintiff is entitled to actual damages in an amount to be proven at trial.

112.   Because Barcroft's copyright infringement was willful, Plaintiff is entitled to statutory damages equal to $150,000 per work infringed.

113.   Plaintiff is further entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

114.   Plaintiff is also entitled to Barcrotft's profits attributable to the infringement, pursuant to 17 U.S.C. § 504(b), including an accounting of and a constructive trust with respect to such profits.

115.   As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Plaintiff is informed and believes and on that basis avers that unless enjoined and restrained by this Court, Barcroft may continue to infringe Plaintiff's rights in the World's Smallest Mom Photographs, the Giant George Photographs, the Amazon Eve Photographs, the Snuggery Photographs, the Barb Guerra Photographs, the Nicole Kelly Photographs, the Wild Thing Photographs and the Conjoined Twins Photographs.   Plaintiff is entitled to preliminary and permanent injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants as follows:

A.      For an award of statutory damages for copyright infringement, including willful infringement, in an amount to be ascertained at trial;

B.      For an award of actual damages for copyright infringement, in an amount to be ascertained at trial;

**COMPLAINT**

FAYER GIPSON LLP

1 C.   For prejudgment interest thereon;

2 D.   For a preliminary and a permanent injunction enjoining Defendants, each

3 of them, and their respective agents, servants, employees, officers, successors,

4 licensees and assigns, and all persons acting in concert or participation with each or

5 any of them, from further exploitation of the World's Smallest Mom Photographs, the

6 Giant George Photographs, the Amazon Eve Photographs, the Snuggery Photographs,

7 the Barb Guerra Photographs, the Nicole Kelly Photographs, the Wild Thing

8 Photographs and the Conjoined Twins Photographs;

9 E.   For a declaration that Defendants have violated the Copyright Act,

10 17 U.S.C. §§ 101, *et seq.*;

11 F.   For Plaintiff's costs of suit;

12 G.   For reasonable attorneys' fees, including those pursuant to the Copyright

13 Act, 17 U.S.C. § 505;

14 H.   For an accounting of, and the imposition of constructive trust with

15 respect to, Defendants' profits attributable to their infringement of Plaintiff's

16 copyrights.

17 I.   For such other and further relief as the Court may deem just and proper.

18

19 DATED:  April 6, 2017                    FAYER GIPSON LLP

20                                         ELLIOT B. GIPSON
                                           STEVEN G. EDWARDS

21                                         By___/s/ ELLIOT B. GIPSON___

22                                             ELLIOT B. GIPSON
                                           Attorneys for Plaintiff Jeffery R. Werner

23

24

25

26

27

28

FAYER GIPSON LLP

24
**COMPLAINT**

# **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury.

DATED:  April 6, 2017                  FAYER GIPSON LLP
                                       ELLIOT B. GIPSON
                                       STEVEN G.  EDWARDS

                                       By___/s/ ELLIOT B. GIPSON___
                                              ELLIOT B. GIPSON
                                       Attorneys for Plaintiff Jeffery R. Werner

FAYER GIPSON LLP

25

**COMPLAINT**