Craig B. Sanders, Esq. (284397)
csanders@sanderslawpllc.com
SANDERS LAW, PLLC
100 Garden City Plaza, Suite 500
Garden City, NY 11530
Telephone: (516) 203-7600
Facsimile: (516) 281-7601

*Attorneys for Defendant*
*Barcroft Media, Ltd.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JEFFREY WERNER,<br><br>                 Plaintiff,<br><br>        vs.<br><br>BARCROFT MEDIA, LTD. and<br>VALNET, INC.,<br><br>                 Defendants. | Case No.: 2:17-cv-02644-JFW-AS<br><br>Hon. John F. Walter<br><br>**DEFENDANT BARCROFT MEDIA, LTD.'s NOTICE OF MOTION PURSUANT TO FED. R. CIV. PRO. 12(b)(6) TO DISMISS COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        September 11, 2017<br>Time:        1:30 PM<br>Courtroom: 7A<br><br>**Action Filed**: April 6, 2017<br><br>**Answer Date**: July 31, 2017 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on Monday, September 11, 2017—or on such date thereafter that the Court deems appropriate—at 1:30 PM in Courtroom 7A of the above-captioned Court, located at 350 W. 1st Street, Los Angeles, CA 90012, Defendant BARCROFT MEDIA, LTD., will and hereby does move this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an Order dismissing the case as against BARCROFT MEDIA, LTD., on the grounds that the Complaint fails to state a claim upon which relief can be granted as against BARCROFT MEDIA, LTD., and for such other and further relief as this Court deems just, appropriate and proper.

This Motion is based on this Notice of Motion and Memorandum of Points and Authorities In Support Thereof filed concurrently herewith; the pleadings and papers on file in this action; and upon such oral and documentary evidence as may be presented at the hearing of this matter, if any.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on multiple dates, including June 21, 2017, July 19, 2017 and July 24, 2017. Despite good faith effort by counsel for Defendant, the parties were unable to reach a resolution that would eliminate the need to bring this Motion.

Dated:       July 31, 2017

SANDERS LAW PLLC

By _/s/ Craig B. Sanders_
Craig B. Sanders
*Attorneys for Defendant*
*Barcroft Media, Ltd.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................i

TABLE OF AUTHORITIES ..........................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES........................................1

   A.   INTRODUCTION ................................................................................1

   B.   JURISDICTION AND VENUE................................................................3

   C.   SUMMARY OF PROCEDURAL POSTURE............................................4

   D.   FACTS ..................................................................................................5

ARGUMENT..................................................................................................12

   I.     Barcroft Is Entitled to an Order Dismissing the Claims Against It...........12

      A.  Standard of Review.......................................................................13

      B.  Plaintiff Has Failed to State a Claim for Contributory Copyright
          Infringement ...............................................................................15

      C.  Plaintiff has Failed to State a Claim for Vicarious Copyright
          Infringement ...............................................................................18

      D.  The Alleged License Agreement Between Barcroft and Valnet
          Does not Support a Claim of Copyright Liability ..................................20

   II.  The Dismissal Sought Herein Should be with Prejudice .............................22

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*A & M Records, Inc. v. Napster, Inc.,*
  239 F.3d 1004 (9th Cir. 2001) ........................................................................17

*Ashcroft v. Iqbal,*
  556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .................................14

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) .................................14

*Campbell v. Trustees of Stanford University,*
  817 F.2d 499 (9th Cir. 1987). .........................................................................22

*Carr v. U.S.,*
  560 U.S. 438 (2010).........................................................................................17

*Cedars–Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.,*
  497 F.3d 972 (9th Cir. 2007) ..........................................................................14

*Eden Toys, Inc. v. Florlee Undergarment Co., Inc.,*
  697 F.2d 27 (2d Cir. 1982) ..............................................................................22

*EEOC v. Waffle House, Inc.,*
  534 U.S. 279, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) ...................................23

*Ellison v. Robertson,*
  357 F.3d 1072 (9th Cir. 2004) ...................................................................16, 19

*Fonovisa, Inc. v. Cherry Auction, Inc.,*
  76 F.3d 259 (9th Cir. 1996) .............................................................................19

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,*
  443 F.2d 1159 (2d Cir. 1971) ..........................................................................17

*Kiser v. General Electric Corp.,*
  831 F.2d 423, 428 (3d Cir.1987), *cert. denied*, 485 U.S. 906 (1988) .............24

*Kuschner v. Nationwide Credit, Inc.,*
  256 F.R.D. 684 (E.D. Cal. 2009).....................................................................24

*Miller v. Rykoff–Sexton, Inc.*,
    845 F.2d 209 (9th Cir. 1988) ............................................................................24

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) ............................................................................14

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) ............................................................................16

*Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ............................................................................16

*Roy Export Co. Establishment v. Columbia 104 Broad. Sys., Inc.*,
    503 F.Supp. 1137 (S.D.N.Y. 1980) ...................................................................23

*Tresona Multimedia, LLC v. Burbank High School Vocal Music
    Association, et al. Additional Party Names: Josh Greene*,
    2017 WL 2728589 (C.D. Cal. 2017) .................................................................16

*U.S. Naval Institute v. Charter Communications, Inc.*,
    936 F.2d 692 (2d Cir. 1991) .............................................................................22

*W. Mining Council v. Watt*,
    643 F.2d 618 (9th Cir. 1981) ............................................................................15

*Warren v. Fox Family Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) ..........................................................................15

*Williams v. Scribd, Inc.*,
    No. 09CV1836-LAB WMC, 2010 WL 10090006 (S.D. Cal. June 23,
    2010) .................................................................................................................15


**Statutes**

17 U.S.C.
    § 106 .................................................................................................................21

28 U.S.C.
    §1331 ...................................................................................................................4
    §1338 ...................................................................................................................4
    §1391(a)(2) ..........................................................................................................4

- iii -

Fed. R. Civ Pro.

    8(a)(2) ........................................................................................... 14

    12(b)........................................................................................2, 15, 23

    12(b)(6) ..................................................................................1, 14, 24

    15(a). ...................................................................................................23

**Treatises**

3 Nimmer § 12.02 .............................................................................22

NOTICE, MOTION AND P&As IN SUPPORT OF MOTION TO DISMISS
CASE NO. 17-02644-JFW-AS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### DEFENDANT BARCROFT MEDIA, LTD.'S
### <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Defendant BARCROFT MEDIA, LTD. ("Barcroft") by and through its undersigned counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby moves this Court for Entry of an Order dismissing the Second and Third Counts for relief in the Complaint filed by Plaintiff JEFFREY WERNER ("Plaintiff" or "Werner") herein, and in support thereof states as follows:

### A.   <u>INTRODUCTION</u>

1.      This is an action alleging claims of Copyright Infringement.  In the Complaint, Plaintiff alleges that Defendant VALNET, INC. ("Valnet") directly infringed his copyrights in eight (8) identified works by posting Plaintiff's photographs and/or videos to Valnet's website and/or on Valnet's YouTube channel, and that such posting was without license or permission from Plaintiff (First Claim for Relief).

2.      Plaintiff also asserts two claims for relief against Barcroft: one claim for contributory copyright infringement (Second Claim for Relief) and one claim for vicarious copyright infringement (Third Claim for Relief).

3.      Barcroft now moves this Court to dismiss the Complaint against it by reason of Plaintiff's failure to have stated a claim upon which relief can be granted.

4.      As the Court will see, the Complaint is nearly silent as to any alleged acts of Barcroft.  Indeed, setting aside the portion of the Complaint that describes the nature of the action and the identity of the parties, Barcroft is mentioned in only eighteen (18) of the one hundred fifteen (115) paragraphs of the Complaint – and only eleven (11) of those paragraphs are even marginally substantive.

5.      With respect to those paragraphs, although it is ordinarily the standard that the Court is required to take the allegations in the Complaint as true for the purposes of a Rule 12(b) motion, the Court need not get that far in this case.  More specifically (and fundamentally), the entire basis of Plaintiff's claims against Barcroft is that after Valnet directly infringed on Plaintiff's copyrights, Barcroft allegedly entered into a "sham back-license agreement" for Valnet's use of the photographs, and that Barcroft purportedly did not have Plaintiff's authority to grant such a license.  Stated otherwise, the Complaint acknowledges – as it must – that Barcroft did not become a part of the story until after the "crime" had been committed.  This fact alone should be dispositive and, therefore, the Court should not need to get to the point of determining whether Plaintiff's allegations are truly factual – as opposed to being conclusory or mere formulaic recitations of the legal elements of a claim – because the Copyright Act does not provide for accessory-after-the-fact liability to a party that had no connection to the infringements when they occurred.

6.      This puts Barcroft in the somewhat awkward position of essentially having to prove a negative on this motion, because we should not have to get to a discussion of the case law – which would still show that Barcroft bears no liability to Plaintiff – until such time that Plaintiff has actually put Barcroft at the proverbial 'scene of the crime,' which he has not.

7.      Assuming *arguendo* that the Court gets beyond this threshold determination, the instant motion still must be granted.  More specifically, even if the allegations of the Complaint are taken to be true, and even if the after-the-fact timing of Barcroft's involvement was not relevant, Plaintiff has still failed to state a claim against Barcroft upon which relief can be granted.  This is because, in order to state a claim for contributory copyright infringement, Plaintiff must prove that Barcroft had knowledge of the infringing activity, and did something to 'induce, cause or materially contribute to it.'  Here, because

Plaintiff avers that Barcroft did not become aware of Valnet's use of Plaintiff's photographs until after the theft and use, it is beyond cavil that Barcroft could neither have caused nor 'materially contributed' to the infringement.

8.      The same is true of Plaintiff's claim against Barcroft for vicarious infringement.  In order to establish such a claim, Plaintiff must allege facts sufficient to show that Barcroft not only had the right and ability to control Valnet, but that it profited from Valnet's infringements.  In this case, Plaintiff does nothing more than summarily state that Barcroft purportedly had the right and ability to control Valnet, but provides no facts to support that conclusion.  In fact, Plaintiff cannot.  Instead, once again overlooking the fact that Barcroft's first involvement with Valnet occurs months after the infringement had already occurred, even in the light most favorable to the Plaintiff Barcroft is akin to the credit card processors who have been found not to be liable for vicarious copyright infringement merely because their customers have used the credit cards to make purchases from direct copyright infringers' websites.  Simply stated, the alleged 'right and ability' to control does not exist and, therefore, the Court need not reach the question of whether Barcroft profited from Valnet's infringements as is alleged.

9.      At the end of the day, Plaintiff's claims against Barcroft must fail because Plaintiff is attempting to impute what is essentially accessory after-the-fact liability to Barcroft, however, the law does not provide for such liability.  To the contrary, under the law of this Circuit, there is a "but for" test for claims of secondary copyright infringement.  On these facts, there is no cause for relief as against Barcroft as a putative secondary infringer under the Copyright Act.

## B.      JURISDICTION AND VENUE

10.      This Court has subject-matter jurisdiction over claims for copyright

- 3 -

infringement pursuant to 28 U.S.C. §1338, as well as federal question jurisdiction under 28 U.S.C. §1331[1].

11.     Venue is proper under 28 U.S.C. §1391(a)(2) in this Judicial District because Barcroft has a presence in Judicial District[2].

## C.     **SUMMARY OF PROCEDURAL POSTURE**

12.     Plaintiff commenced this action upon the filing of a Complaint with this Court on April 6, 2017 [ECF Doc. 1, *et seq.*].

13.     Barcroft executed a Rule 4 waiver of service on May 1, 2017 [ECF Doc. 12].

14.     On June 28, 2017, Plaintiff and Barcroft executed a Stipulation extending Barcroft's time to Answer the Complaint [ECF Doc. 13].  The Court approved the Stipulation on July 6, 2017, setting the date for Barcroft to Answer or otherwise move with respect to the Complaint on or before July 31, 2017 [ECF Doc. 15].

15.     On July 5, 2017, the Court entered an Order setting the initial scheduling conference for August 328, 2017 [ECF Doc. 14].

16.     On July 24, 2017, Plaintiff filed a request for the Clerk to issue a Summons to Valnet [ECF Doc. 16].  The Summons was issued on July 25, 2017 [ECF Doc. 17].

---

**1**     This statement is limited to the fact that the Complaint alleges claims of secondary copyright infringement as against Barcroft, and is admitted for purposes of this motion only. Should the claims as pled against Barcroft be dismissed, Barcroft reserves its right to contest this Court's subject matter jurisdiction over it.

**2**     Venue is conceded as proper only to the extent that this Court has subject matter jurisdiction over this dispute.

D. **FACTS**

17.     The facts of this case are taken from the Complaint filed in this action [ECF Doc. 1, *et seq.*]3.

18.     Plaintiff is an individual and a photographer, residing in Los Angeles, California [Id. at ¶ 9, 14]. Over the course of his career, Plaintiff has developed a portfolio of work that covers a wide range of subjects [Id. at ¶ 14].

19.     Plaintiff earns income from licensing his photographs [Id. at ¶ 15].

20.     Barcroft is a Limited company duly organized and existing under the laws of the United Kingdom [Id. at ¶ 10]. Barcroft's business is comprised of licensing copyrighted images and videos, among other things, to media clients throughout the world [Id.].

21.     Valnet is a Canadian corporation with offices in Quebec, Canada, and a branch office in Los Angeles, California [Id. at ¶ 11]. Valnet operates a website named "theRICHEST," located at www.therichest.com. According to VALNET, therichest.com is one of the biggest online luxury and entertainment magazines with over 28 million visits per month and 150,000,000 monthly page views [Id. at ¶ 50].

22.     Relative to the instant case, Plaintiff alleges that he is the owner of:

a. An unspecified number of pictures and videos of Stacy Herald, a two-foot four-inch tall pregnant woman (the "World's Smallest Mom Photographs") [Id. at ¶¶ 23-28]. Plaintiff alleges that the World's Smallest Mom Photographs were taken in or about May of 2009, but were not registered

---

**3**     At the outset of this section, Barcroft notes that the instant Statement of Facts is primarily intended to show the Court that the Complaint does not (and cannot) introduce Barcroft to the story until *after* the alleged direct infringements by Valnet occurred.

1    with the United States Copyright Office (the "USCO") until

2    October 29, 2009 [Id. at ¶¶ 23, 26];

3       b.  An unspecified number of pictures of "Giant George," a

4           seven-foot long Great Dane who at the time was being

5           discussed as a contender for the title of "World's Tallest

6           Dog" (the "Giant George Photographs") [Id. at ¶¶ 29-31].

7           Plaintiff alleges that the Giant George Photographs were

8           taken on or about November 4, 2009, and were purportedly

9           registered with the USCO on November 11, 2009 [Id. at ¶¶

10          29, 31];

11      c.  An unspecified number of pictures of Erika Ervin, the

12          "World's Tallest Professional Model" (the "Amazon Eve

13          Photographs") [Id. at ¶¶ 32-34].   Plaintiff avers that the

14          Amazon Eve Photographs were taken "in or about 2010" and

15          were purportedly registered with the USCO on October 25,

16          2010 [Id. at ¶¶ 32, 34];

17      d.  An unspecified number of pictures of an unnamed woman

18          from Rochester, New York, who had started a business

19          known as "the Snuggery" (the "Snuggery Photographs") [Id.

20          at ¶¶ 35-37].   Plaintiff avers that the Snuggery Photographs

21          were taken "in or about August, 2012, and were purportedly

22          registered with the USCO on October 25, 2012 [Id. at ¶¶ 35,

23          37];

24      e.  An unspecified number of pictures of Barb Guerra, a double-

25          amputee and bodybuilder (the "Amputee Bodybuilder

26          Photographs") [Id. at ¶¶ 38-40].   Plaintiff avers that the

27          Amputee Bodybuilder Photographs were taken "in or about

28          late 2013 or early 2014" and were purportedly registered

with the USCO on or about January 24, 2014 [Id.];

f.  An unspecified number of pictures of Miss Iowa Nicole Kelly, a beauty pageant winner who was born without her left forearm (the "Miss Iowa Photographs") [Id. at ¶¶ 41-43]. Plaintiff does not state when the Miss Iowa Photographs were allegedly taken, but avers that they were registered with the USCO on February 10, 2014 [Id.];

g.  An unspecified number of pictures of "Wild Thing" a 2100-pound bison living with its Texas owners (the "Wild Thing Photographs") [Id. at ¶¶ 44-46]. Plaintiff does not state when the Wild Thing were allegedly taken, but avers that they were registered with the USCO on May 16, 2014 [Id.];

h.  An unspecified number of pictures of Lori and George Schappell, conjoined twins joined at the head (the "Conjoined Twins Photographs") [Id. at ¶¶ 47-49]. Plaintiff avers that the Conjoined Twins Photographs were taken on or about February 26, 2008, and that they were purportedly registered with the USCO "effective as of March 10, 2009" [Id.].

23.     On or about February 27, 2015, through its theRICHEST website, Valnet published an article and accompanying video titled "The 10 Oddest Mothers in the World," which contained several of Plaintiff's World's Smallest Mom Photographs [Id. at ¶ 58]. Plaintiff avers that Valnet's reproduction and distribution of the World's Smallest Mom Photographs was unauthorized and would therefore constitute a direct copyright infringement [Id. at ¶ 59].

24.     On or about March 20, 2015, through its theRICHEST website, Valnet published an article titled "15 Of The Easiest And Best Paying Jobs in 2015," which contained several of Plaintiff's The Snuggery Photographs [Id. at

¶ 60].  Plaintiff avers that Valnet's reproduction and distribution of the Snuggery Photographs was unauthorized and therefore constitutes a direct copyright infringement [Id. at ¶ 62].

25.       In 2015, through its theRICHEST YouTube channel, Valnet published a video titled "10 Most Unusual Pets Ever," which contained several of Plaintiff's Giant George Photographs [Id. at ¶ 63]. In 2015, through its theRICHEST YouTube channel, Valnet published a video titled "The Biggest Dogs That Actually Exist," which also contained several of Plaintiff's Giant George Photographs [Id. at ¶ 64].   Plaintiff avers that Valnet's reproduction and distribution of the Giant George Photographs was unauthorized and therefore constitutes a direct copyright infringement [Id. at ¶ 65].

26.       In 2015, through its theRICHEST website, Valnet published an article and accompanying video titled "10 Most Unusual Fashion Models," which contained several of Plaintiff's Amazon Eve photographs [Id. at ¶ 66].  In 2015, through its theRICHEST YouTube channel, Valnet posted a video titled "10 Women You Won't Believe Exist," which again contained several of Plaintiff's Amazon Eve photographs [Id. at ¶ 67].  Plaintiff avers that Valnet's reproduction and distribution of the Amazon Eve Photographs was unauthorized and therefore constitutes a direct copyright infringement [Id. at ¶ 68].

27.       In 2015, through its theRICHEST YouTube channel, Valnet published a video titled "10 Most Unusual Bodybuilders in The World," which contained several of Plaintiff's Amputee Bodybuilder Photographs [Id. at ¶ 69]. Plaintiff avers that Valnet's reproduction and distribution of the Amputee Bodybuilder Photographs was unauthorized and therefore constitutes a direct copyright infringement [Id. at ¶ 70].

28.       In 2015, through its theRICHEST YouTube channel, Valnet published a video titled "Strange Beauty Pageants Around The World," which contained several of Plaintiff's Miss Iowa Photographs [Id. at ¶ 71].  Plaintiff

avers that Valnet's reproduction and distribution of the Miss Iowa Photographs was unauthorized and therefore constitutes a direct copyright infringement [Id. at ¶ 72].

29.     On or about May 6, 2016, through its theRICHEST YouTube channel, Valnet published a video titled "The Most Unusual Pets People Actually Own," which contains several of Plaintiff's Wild Thing Photographs [Id. at ¶ 73].  Plaintiff avers that Valnet's reproduction and distribution of the Wild Thing Photographs was unauthorized and therefore constitutes a direct copyright infringement [Id. at ¶ 74].

30.     Plaintiff avers that he discovered Valnet's infringement of Plaintiff's Smallest Mom Photographs in or about late May of 2015 [Id. at ¶ 75]. The Complaint does not allege that Barcroft knew of Valnet's infringement at this particular time.  The Complaint does not allege that Plaintiff addressed Valnet's infringement with Barcroft at this time.  To the contrary, the Complaint alleges that Plaintiff first addressed Valnet's infringement with Barcroft on or about June 17, 2016 [Id. at ¶ 22].

31.     Plaintiff avers that he discovered Valnet's infringement of Plaintiff's Giant George Photographs in or about late May of 2015 [Id. at ¶ 76]. The Complaint does not allege that Barcroft knew of Valnet's infringement at this particular time.  The Complaint does not allege that Plaintiff addressed Valnet's infringement with Barcroft at this time.  To the contrary, the Complaint alleges that Plaintiff first addressed Valnet's infringement with Barcroft on or about June 17, 2016 [Id. at ¶ 22].

32.     Plaintiff avers that he discovered Valnet's infringement of Plaintiff's Amazon Eve Photographs in or about May of 2015 [Id. at ¶ 77].  The Complaint does not allege that Barcroft knew of Valnet's infringement at this particular time.  The Complaint does not allege that Plaintiff addressed Valnet's infringement with Barcroft at this time.  To the contrary, the Complaint alleges

1   that Plaintiff first addressed Valnet's infringement with Barcroft on or about

2   June 17, 2016 [Id. at ¶ 22].

3        33.    Plaintiff avers that he discovered Valnet's infringement of

4   Plaintiff's Snuggery Photographs in or about May of 2015 [Id. at ¶ 78].  The

5   Complaint does not allege that Barcroft knew of Valnet's infringement at this

6   particular time.  The Complaint does not allege that Plaintiff addressed Valnet's

7   infringement with Barcroft at this time.  To the contrary, the Complaint alleges

8   that Plaintiff first addressed Valnet's infringement with Barcroft on or about

9   June 17, 2016 [Id. at ¶ 22].

10       34.    Plaintiff avers that he discovered Valnet's infringement of

11  Plaintiff's Amputee Bodybuilder Photographs in or about late May of 2015 [Id.

12  at ¶ 79].  The Complaint does not allege that Barcroft knew of Valnet's

13  infringement at this particular time.  The Complaint does not allege that Plaintiff

14  addressed Valnet's infringement with Barcroft at this time.  To the contrary, the

15  Complaint alleges that Plaintiff first addressed Valnet's infringement with

16  Barcroft on or about June 17, 2016 [Id. at ¶ 22]

17       35.    Plaintiff avers that he discovered Valnet's infringement of

18  Plaintiff's Miss Iowa Photographs in or about May of 2016 [Id. at ¶ 80].

19       36.    Plaintiff avers that he discovered Valnet's infringement of

20  Plaintiff's Wild Thing Photographs in or about May of 2016 [Id. at ¶ 81].

21       37.    Plaintiff avers that he discovered Valnet's infringement of

22  Plaintiff's Conjoined Twins Photographs in or about May of 2016 [Id. at ¶ 82].

23       38.    In or about 2004, Plaintiff and Barcroft entered into an agreement

24  whereby Barcroft was authorized to license and distribute Plaintiff's

25  photographs within the United Kingdom [Id. at ¶ 17].  The agreement left open

26  the possibility for Barcroft to license or distribute Plaintiff's photographs outside

27  of the United Kingdom, however, such licenses would be negotiated on a case-

28  by-case basis [Id.].

39.     The Complaint goes on to allege that at "sometime" in 2015, Barcroft became aware that Valnet was using "certain" of Plaintiff's photographs without Plaintiff's permission (along with several dozen photographs and/or videos owned by Barcroft that Valnet was using without Barcroft's license, permission or other authorization) [Id. at ¶ 20]. This is the first time the Complaint alleges that Barcroft and Valnet became aware of each other.

40.     The Complaint next alleges that, on or about December 30, 2015, Barcroft signed a licensing deal with Valnet, granting Valnet access to Barcroft's imagery and video content for use across their various media brands [Id. at ¶ 10, 21]. While Plaintiff avers that he "never approved or authorized such an agreement" [Id. at ¶ 21], the Complaint does not allege that the December 30, 2015 agreement between Barcroft and Valnet covered any of Plaintiff's works.

41.     Instead, Plaintiff alleges that Barcroft purportedly entered into a separate "sham back-license" with Valnet for Plaintiff's photographs at issue here, and that Barcroft allegedly knew that it was not authorized to license such photographs [Id. at ¶ 98].

42.     From these allegations alone, Plaintiff alleges that Barcroft and/or its agents were the "active, conscious, and moving force behind all of the infringements" described in the Complaint [Id. at ¶ 21].

43.     Barcroft now moves this Court pursuant to Fed. R. Civ. Pro. 12(b)(6) for an Order dismissing the claims asserted against it by reason of Plaintiff's failure to have stated a claim upon which relief can be granted.

# ARGUMENT

## I.   Barcroft Is Entitled to an Order Dismissing the Claims Against It

44.     Barcroft is entitled to dismissal of the secondary infringement claims asserted against it because, even if the scant allegations in the Complaint against Barcroft are taken as true, the Complaint still fails to state a claim upon which relief can be granted.  More specifically, the Complaint establishes that Barcroft did not know of Valnet's infringements until after they occurred (and until after Plaintiff himself had discovered at least half of them).

45.     This is a critical point for a number of reasons but, most notably, because the facts show that Barcroft had no relationship whatsoever with Valnet at the time the infringements occurred.  All of the case law either inculpating or exculpating a third-party from secondary copyright liability for the direct infringement of another begins with the third-party having some form of then existing relationship with the direct infringer at the time of the infringement.  Here, the Complaint acknowledges (as it must) that Barcroft and Valnet had no relationship at the time of the alleged infringements.

46.     Plaintiff's entire theory against Barcroft is that Barcroft purportedly gave Valnet a "sham back-license" after the infringements occurred, and that Plaintiff did not authorize Barcroft to issue that license.  On the facts, as pled, Barcroft could not have 'induced, caused or have materially contributed to' the infringements, as would be required to prevail on a claim of contributory infringement, because the infringements had already occurred at the time Barcroft is 'introduced into the story.'  Similarly, there are no allegations in the Complaint to show that Barcroft had the "right and ability to control" Valnet, as would be necessary to prevail on a claim of vicarious copyright infringement (other than one conclusory sentence in the Third Claim for Relief) at the time the direct infringement occurred.

47.      For all these reasons, as well as those set forth *infra,* the Court should dismiss the Complaint as against Barcroft.

## A. <u>Standard of Review</u>

48.      "A rule 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint." *Williams v. Scribd, Inc.,* 2010 WL 10090006 *2 (S.D. Cal. 2010) citing *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). "In considering such a motion, the Court accepts all allegations of material fact as true and construes them in the light most favorable to the non-moving party." *Id.* citing *Cedars–Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.,* 497 F.3d 972, 975 (9th Cir. 2007).

49.      Although the Complaint need only satisfy the requirements of Fed. R. Civ Pro. 8(a), it still must be sufficient to show that "the pleader is entitled to relief."   Fed. R. Civ Pro. 8(a)(2).   As the Supreme Court has held, while the factual allegations are not required to be overly detailed, they must be sufficient to "raise a right to relief above the speculative level...." *Bell Atlantic Corp. v. Twombl*y, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ("some threshold of plausibility must be crossed at the outset before a  … case should be permitted to go into its inevitably costly and protracted discovery phase") *Id*. at 558 quoting *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc*., 289 F.Supp.2d 986, 995 (N.D. Ill. 2003).

50.      A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully") Id.

51.      Although Rule 12(b) requires the Court to accept all facts in a Complaint as true, the same does not apply to legal conclusions masquerading as factual allegations.  See, e.g., *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003) ("[w]e do not ... necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations") (quoting *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981)).  A Complaint will be insufficient where, as here, it tenders nothing more than 'naked assertions devoid of further factual enhancement.'  *Iqbal*, 556 U.S. at 677.   Indeed, as the Supreme Court held in *Twombly*, 'a mere formulaic recitation of the elements of a cause of action will not do.'  *Twombly,* 550 U.S. at 555.

52.      In this case, the Complaint is far from a "model of lucidity." *Williams v. Scribd, Inc.,* No. 09CV1836-LAB WMC, 2010 WL 10090006 (S.D. Cal. June 23, 2010) at *1.   Indeed, the Complaint fails to set forth any discernable timeline and tends to focus on facts pertaining to Plaintiff, which can only be viewed as an effort to put some factual predicate into the Complaint, while distracting from the fact that the Complaint is nearly silent as to any alleged acts of Barcroft.   Further to this point, when Plaintiff is unable to attribute any wrongdoing to Barcroft specifically, the Court will see that the Complaint switches to the pronoun "Defendants" in place of either of them, to further mask the lack of factual predicate.

53.      For example, Plaintiff repeatedly avers that "Defendants' [sic.] unauthorized reproduction and distribution of the [name of set] Photographs has continued, uninterrupted, since they were posted to theRICHEST's website."  See, e.g., Dkt. 1 at ¶¶ 59, 62, 65, 68, 70, 72, 74.   The above allegations are clearly designed to conceal the fact that Plaintiff cannot attribute any such alleged acts of wrongdoing as against Barcroft.   More specifically, there are no allegations that Barcroft had access to theRICHEST's website and/or that

- 14 -

1  Barcroft actually posted any content thereto.  To the contrary, the Complaint
2  alleges that Valnet is solely responsible for its websites.  See, e.g., Dkt. 1 at ¶¶
3  50-55.

4      54.      In light of the foregoing, it is easy to see that the Complaint fails to
5  satisfy the *Iqbal-Twombly* standard as against Barcroft, insofar as it contains
6  nothing more than naked assertions devoid of further factual enhancement.  As
7  was stated above, however, even if Plaintiff's naked assertions were deemed to
8  be true, Plaintiff cannot get around the fact that he does not (and cannot)
9  introduce Barcroft to the story until after Valnet allegedly infringed on his
10 copyrights.

11     55.      For these reasons, as well as those set forth herein, the Complaint
12 must be dismissed as against Barcroft.

13
14         **B. <u>Plaintiff Has Failed to State a Claim for Contributory</u>**
        **<u>Copyright Infringement</u>**
15

16     56.      The Second Claim for Relief in the Complaint asserts a claim
17 against Barcroft for contributory copyright infringement.

18     57.      Contributory copyright infringement is "a form of secondary
19 liability with roots in the tort-law concepts of enterprise liability and imputed
20 intent." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 670 (9th Cir. 2017)
21 quoting *Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*, 494 F.3d 788, 794–95 (9th Cir.
22 2007).

23     58.      As Judge Wilson of this Court recently observed, a defendant is
24 contributorily liable "if [it has] knowledge of the infringing activity and induces,
25 causes or materially contributes to the infringing conduct." *Tresona Multimedia,*
26 *LLC v. Burbank High School Vocal Music Association, et al. Additional Party*
27 *Names: Josh Greene*, 2017 WL 2728589 (C.D. Cal. 2017) quoting *Ellison v.*
28 *Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (citing *Gershwin Publ'g Corp.*

1  *v. Columbia Artists Mgmt., Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971)) (internal

2  quotations omitted) (brackets added).

3      59.     It is axiomatic that Barcroft did nothing to induce, cause or

4  materially contribute to Valnet's alleged infringement because these words are

5  used in the present tense and one cannot 'induce, cause or materially contribute'

6  to an event that occurred in the past.  *See, e.g., Carr v. U.S.*, 560 U.S. 438 (2010)

7  ("words used in the present tense include the future as well as the present," 1

8  U.S.C. § 1, implies that the present tense generally does not include the past").

9  Here, the claims against Barcroft must fail because the Complaint alleges that

10  Barcroft did not come to know of Valnet's alleged infringement of Plaintiff's

11  works until after they occurred.

12      60.     Further to this point, the Ninth Circuit has found that contributory

13  liability will not attach unless the defendant "engages in personal conduct that

14  encourages or assists the infringement." *A & M Records, Inc. v. Napster, Inc.,*

15  239 F.3d 1004, 1019 (9th Cir. 2001) (internal citations omitted) (emphasis

16  added).  This is yet another example of where the verbs ("encourage" and

17  "assist") are used in the present tense, and this requirement was further endorsed

18  by the Supreme Court in *Metro–Goldwyn–Mayer Studios, Inc. v. Grokster, Ltd.,*

19  wherein the Court adopted from patent law the concept of "inducement" and

20  found that "[o]ne infringes contributorily by *intentionally* inducing or

21  encouraging direct infringement." 545 U.S. 913, 930, 125 S.Ct. 2764, 162

22  L.Ed.2d 781 (2005); *Amazon.com,* 487 F.3d ("an actor may be contributorily

23  liable [under *Grokster*] for intentionally encouraging direct infringement if the

24  actor knowingly takes steps that are substantially certain to result in such direct

25  infringement").

26      61.     Despite the well-settled requirements to state a claim for

27  contributory infringement, the Complaint falls woefully short of the burden of

28  pleading – let alone the burden of proof.  As was discussed above, to state a

1   claim of contributory infringement, Plaintiff must allege facts sufficient to show

2   that Barcroft undertook actions that would currently or prospectively induce,

3   cause, or materially contribute to the infringing conduct. See, e.g., *Ellison*, 357

4   F.3d at 1076.  Here, the Complaint fails to do so.

5       62.     While the Complaint purports to allege sufficient facts to support a

6   claim of direct infringement as against Valnet, it does not allege any sufficient

7   predicate to state a claim for contributory infringement as against Barcroft.

8   More specifically, Plaintiff does not allege that any infringing material passed

9   over or through Barcroft systems or that Barcroft's systems were used to alter or

10  display the infringing images.  Instead, the entire claim is based upon Barcroft's

11  alleged knowledge of Valnet's infringement(s) and its purported issuance of a

12  retroactive license after the direct infringement had allegedly already transpired.

13  This does not establish that Barcroft knew of Valnet's infringing activity at the

14  time that it occurred.  To the contrary, the allegation that Barcroft entered into a

15  "sham [sic.] back-license" shows that Barcroft did not know of the alleged

16  infringements until after they occurred.

17      63.     In light of the foregoing, even if all of the facts alleged in the

18  Complaint were true, Valnet's alleged infringing conduct was performed

19  exclusively by Valnet without Barcroft's knowledge and/or involvement at the

20  time of the infringement.  The entry of a retroactive license agreement does not

21  alter and/or contribute to the already completed conduct by Valnet. This is

22  critical, because the law of the Ninth Circuit establishes a "but-for" test for

23  contributory infringement. Simply, even if Barcroft did not enter into any

24  agreement with Valnet there would still have been infringement by Valnet.

25      64.     As a result, the Complaint fails to allege any set of facts under

26  which Barcroft could be contributorily liable for Valnet's alleged infringements.

27

28

### C. **Plaintiff has Failed to State a Claim for Vicarious Copyright Infringement**

65.     The Third Claim for Relief of the Complaint seeks to hold Barcroft liable for vicarious copyright infringement.  Vicarious infringement is a concept related to, but distinct from, contributory infringement.  Whereas contributory infringement is based on tort-law principles of enterprise liability and imputed intent, vicarious infringement finds its roots in the agency principles of respondeat superior. See, e.g., *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 261-262 (9th Cir. 1996).

66.     To state a claim for vicarious copyright infringement, a plaintiff must allege that the defendant has: (1) the right and ability to supervise the infringing conduct; and (2) a direct financial interest in the infringing activity. *Ellison*, 357 F.3d at 1078; *Napster*, 239 F.3d at 1022 (citations omitted). The Supreme Court has recently offered an alternate formulation of the test: "One ... infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Grokster*, 545 U.S. at 930, 125 S.Ct. 2764 (internal citations omitted).

67.     In this case, Plaintiff has failed to allege any facts sufficient for the Court to find that Barcroft had the right and ability to supervise and/or control Valnet.  Instead, the entire basis of Plaintiff's claim in this regard is summarized in one conclusory sentence of the Complaint, to wit: "Barcroft has the ability to oversee and control the infringing activity of Valnet, through its purported 2015 licensing agreement with Valnet, and also by their [sic] control of photographic and videographic property which Barcroft has been given permission to license and distribute within the United Kingdom."  Dkt. 1 at ¶ 109.

68.     Even if this conclusory statement were supported by specific factual allegations in the Complaint – which it is not – the existence of a limited business relationship between Barcroft and Valnet in the form of the licensing

- 18 -

1   agreement does not confer on Barcroft the requisite degree of 'right and ability
2   to supervise' the infringing conduct within the meaning of the case law.   The
3   facts in Perfect 10, Inc. v. Visa Intern. Service Ass'n (supra), are instructive on
4   this point.

5   69.      In Visa Intern. Service Ass'n, Perfect 10 brought claims against
6   Visa (and other credit card grantors) for inter alia, secondary copyright
7   infringement.   The claims were grounded in the contention that Visa (and the
8   other lender-defendants) continued to process credit card charges incurred by
9   customers to acquire the infringing images.

10   70.      In support of its claim for vicarious copyright infringement, Perfect
11   10 alleged that the Visa defendants had the right and ability to control the
12   content of the infringing websites because they could have refused to process
13   credit card payments to the websites. Perfect 10 further argued that the
14   contractual terms between the website owners and the credit card companies
15   effectively gave the credit card companies contractual control over the content
16   of their merchants' websites, and that the contractual control over the content
17   was sufficient to establish the "right and ability" to control that content for
18   purposes of vicarious liability.

19   71.      The Ninth Circuit disagreed with Perfect 10 and held that, "even
20   with all reasonable inferences drawn in Perfect 10's favor, Perfect 10's
21   allegations of fact cannot support a finding that Defendants have the right and
22   ability to control the infringing activity."  Visa Intern. Service Ass'n, 494 F.3d at
23   803 simply by being in contract with the infringer to provide access to its
24   payment services network.

25   72.      While *Visa Intern.* strongly supports Barcroft's position, to wit, that
26   the license agreement between Barcroft and Valnet is legally insufficient to
27   provide the requisite right and ability to control infringing activity, the critical
28   difference between this case and Visa Intern. Service Ass'n, however, is that the

Visa defendants had a relationship with the infringing websites at the time the infringements occurred. As has been stated throughout this memorandum, no such relationship existed between Barcroft and Valnet at the time the infringements occurred.

73. Further, as noted above, even if the parties had a relationship at that time, under the holding in *Visa Intern. Service Ass'n,* requires the conclusion that Barcroft did not have the requisite degree of control over Valnet to be held secondarily liable as an infringer. This is because "the mere ability to withdraw a financial "carrot" does not create the "stick" of "right and ability to control" that vicarious infringement requires." *Visa Intern. Service Ass'n,* 494 F.3d at 803.

74. In sum, "[t]o find that [Barcroft's] activities fall within the scope of such tests would require a radical and inappropriate expansion of existing principles of secondary liability and would violate the public policy of the United States." *Visa Intern. Service Ass'n,* 494 F.3d at 795.

### D. The Alleged License Agreement Between Barcroft and Valnet Does not Support a Claim of Copyright Liability

75. To the extent that the claims against Barcroft appear to find their roots in the contention that Barcroft purportedly did not have the right to issue a license to Valnet on behalf of Plaintiff, such allegations also do not give rise to a claim for contributory or vicarious infringement as against Barcroft. This is because the right to sue for an accrued claim for infringement is not an exclusive right under 17 U.S.C. § 106. Section 201(d) of the Copyright Act refers to exclusive rights and provides:

> The ownership of a copyright may be transferred in whole or
> in part by any means of conveyance or by operation of law,
> and may be bequeathed by will or pass as personal property

- 20 -

by the applicable laws of intestate succession.  Any of the exclusive rights comprised in a copyright, including any subdivision of any of the rights specified by section 106, may be transferred as provided by clause (1) and owned separately. The owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner by this title.

17 U.S.C. § 201(d).

76.     Exclusive rights in a copyright may be transferred and owned separately, but §201(d) creates no exclusive rights other than those listed in §106, nor does it create an exception to § 501(b).

77.     The courts have consistently held that a non-exclusive license conveys no ownership interest, and the holder of a nonexclusive license may not sue others for infringement. See *Eden Toys, Inc. v. Florlee Undergarment Co., Inc.*, 697 F.2d 27, 32 (2d Cir. 1982) ("The Copyright Act authorizes only two types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights") (citations omitted).

78.     An exclusive license, on the other hand, conveys an ownership interest. See *Campbell v. Trustees of Stanford University*, 817 F.2d 499, 504 (9th Cir. 1987).   Accordingly an exclusive licensee may sue others for infringement, including the licensor – if the licensor infringes on the exclusive right he granted the licensee. See *U.S. Naval Institute v. Charter Communications, Inc.*, 936 F.2d 692,  695 (2d Cir. 1991) (citing 3 Nimmer § 12.02).

79.     The foregoing is relevant because, if it is Plaintiff's contention that Barcroft did not have authority to issue a retroactive license to Valnet on behalf of Plaintiff, the issuance of such license would not impair Plaintiff's rights as

- 21 -

against Valnet.  This is because a retroactive license or assignment that purports to eliminate the accrued causes of action for infringement held by a co-owner (here, Plaintiff) who is not party to the license or agreement, would  not be binding on the co-owner/non-party under the fundamental principle of contract law prohibiting parties to a contract from binding nonparties. See, e.g., *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 294, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) ("It goes without saying that a contract cannot bind a nonparty.") (parentheticals added). Moreover, a co-owner (or non-exclusive licensor) who purports to convey not only his right to prosecute past infringements but also his co-owners' (or non-exclusive licensor) right to prosecute past infringements violates the basic rule that an owner cannot convey more than he owns. See *Roy Export Co. Establishment v. Columbia 104 Broad. Sys., Inc.,* 503 F.Supp. 1137, 1153 (S.D.N.Y. 1980) ("[I]t is axiomatic that no one can convey more than his own interest in a work.").

80.     Based on the existing case law, regardless of the geographic scope of the agency issues raised by the Complaint, the agreement between Barcroft and Valnet could not legally have resolved any prior infringing uses by Valnet vis-à-vis Plaintiff.  By the same token, it does not give rise to any cause of action by Plaintiff against Barcroft as an alleged contributory or vicarious infringer.

## II.     The Dismissal Sought Herein Should be with Prejudice

81.     When faced with a motion to dismiss under Rule 12(b), a plaintiff may seek leave to amend his pleading under Fed. R. Civ. Pro. 15(a).

82.     Although leave should be "freely given when justice so requires," an exception to that rule is when the putative amendment would be futile. "Leave to amend should not be granted where amendment would be futile.

1     *Kuschner v. Nationwide Credit, Inc*., 256 F.R.D. 684, 687 (E.D. Cal. 2009)

2     citing *Miller v. Rykoff–Sexton, Inc*., 845 F.2d 209, 214 (9th Cir. 1988); *Kiser v.*

3     *General Electric Corp*., 831 F.2d 423, 428 (3d Cir.1987), *cert. denied*, 485 U.S.

4     906, 108 S.Ct. 1078, 99 L.Ed.2d 238 (1988).

5         83.     "The test for futility is identical to the one used when considering

6     the sufficiency of a pleading challenged under Rule 12(b)(6)." *Id*. citing *Miller*,

7     845 F.2d at 214. "Accordingly, a proposed amendment is futile only if no set of

8     facts can be proved under the amendment to the pleading that would constitute a

9     valid and sufficient claim or defense." *Id*.

10        84.     In this case, any putative amendment to the Complaint by Plaintiff

11     would be futile because the Complaint already establishes – as it must – that the

12     relationship between Barcroft and Valnet did not come into being until after the

13     alleged infringements occurred.  Stated otherwise, there is no way for Plaintiff to

14     amend the Complaint so as to put Barcroft in the proverbial room at the time

15     that the crime was committed.

16        85.     For all these reasons, it is respectfully requested that the Court

17     grant the instant motion and dismiss the claims as against Barcroft *with*

18     *prejudice*, together with such other and further relief as this Court deems just,

19     equitable and proper.

20

21                        SANDERS LAW PLLC

22

23           By  */s/ Craig B. Sanders*

24              Craig B. Sanders
             *Attorneys for Plaintiff*

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 31, 2017.


/s Craig B. Sanders