SANDERS LAW, PLLC
Craig B. Sanders, Esq. (Cal Bar. No. 284397)
csanders@sanderslawpllc.com
Jonathan M. Cader (*pro hac vice*)
jcader@sanderslawpllc.com
100 Garden City Plaza, Suite 500
Garden City, NY  11530
Telephone:  (516) 203-7600
Facsimile:   (516) 281-7601

*Attorneys for Defendant*
*Barcroft Media, LTD.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFERY WERNER,<br><br>            Plaintiff,<br><br>     vs.<br><br>BARCROFT MEDIA, LTD AND VALNET, INC.,<br><br>            Defendants. | Case No.: No. 2:17-cv-02644-JFW-AS<br><br>**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF DEFENDANT BARCROFT MEDIA, LTD'S MOTION FOR SUMMARY JUDGMENT**<br><br>Judge: Hon. John F. Walter<br>Magistrate: Hon. Alka Sagar<br><br>Action Filed:           April 6, 2017<br>Discovery Cutoff:   February 16, 2018<br>Pretrial Conf.:   Apr. 6, 2018, 10:00AM<br>Trial Date:        Apr. 24, 2018, 8:30AM<br><br>Hearing Date: _____, 2018<br>Time:              10:00AM<br>Courtroom:   255 E. Temple St.,<br>              5th Floor, Courtroom 540 |

1
STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56-1 of the Local Rules of the United States District Court for the Central District of California, Defendant Barcroft Media, Ltd. ("Barcroft") submits the following Statement of Uncontroverted Facts and Conclusions of Law in support of its Motion for Summary Judgment.

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 1. Plaintiff is a photographer by profession. | Dkt. 38 (Order) at p. 1. |
| 2. Barcroft is a creator, curator, publisher, licensor and distributor of journalistic content, still photography and video imagery, which it makes available to a wide array of media outlets throughout the world. | Declaration of Sam Barcroft ("Barcroft Decl.") ¶10. |
| 3. Barcroft publishes content directly through its website, through Barcroft TV and its YouTube channels. | Barcroft Decl. ¶10. |
| 4. In addition to publishing content through its own website and YouTube channels, Barcroft has a network of content purchasers, such as Mail Online, The Sun, The Guardian, The Daily Telegraph, the New York Post, Huffington Post, Buzz Feed, Bauer Media Group, BBC News, ABC News and CNN. | Barcroft Decl. ¶10. |
| 5. Defendant Valnet owns and operates the websites known as "TheRichest", "TheTalko" and "TheThings", together with related YouTube channels bearing the same names. | First Amended Complaint (the "FAC") [Dkt. 39] at ¶¶ 3, 4. |
| 6. Plaintiff alleges that Valnet | FAC at ¶ 5. |

|   |   |   |
|---|---|---|
|   | directly infringed no fewer than eight (8) of his stories, registered in nine (9) separate works, by posting same to its YouTube channels without license or permission from Plaintiff. |   |
| 7. | Plaintiff seeks to hold Barcroft contributorily liable for two (2) of Valnet's direct infringements by alleging that Valnet obtained the images from Barcroft's library or with Barcroft's assistance. | Dkt. 59 (Order) at p. 3; FAC at ¶ 91. |
| 8. | Plaintiff alleges that Barcroft is contributorily liable for two (2) of Valnet's direct infringements by alleging that Barcroft purportedly claimed that it had ownership or control of the underlying content. | Dkt. 59 (Order) at p. 3; FAC at ¶ 24. |
| 9. | In or about October of 2004, Barcroft entered into an oral understanding with Plaintiff whereby Barcroft was granted permission to distribute Plaintiff's photographs in the United Kingdom. | Barcroft Decl. ¶ 11. |
| 10. | Pursuant to the October, 2004 understanding, Barcroft could also seek to distribute Plaintiff's photographs to media outlets outside of the United Kingdom, however, those agreements would be negotiated on a case-by-case basis. | Barcroft Decl. ¶ 11. |
| 11. | In or about November of 2015, Barcroft discovered that certain of its works were being used by Valnet on its "TheRichest" | Barcroft Decl. ¶ 15. |

| | | |
|---|---|---|
| | YouTube channel. | |
| | 12. Valnet illegally copied and displayed several photographs of a woman named "Andrianne Lewis," who is known as being the woman who has the "world's longest tongue.' | Barcroft Decl. ¶ 16. |
| | 13. The photographs of Andrianne Lewis are owned by Barcroft and were displayed in a YouTube video published by Valnet on its "TheRichest" channel under the title "Extremely Big Body Parts on People" without Barcroft's license or permission. | Barcroft Decl. ¶ 17-19. |
| | 14. Following this discovery, Barcroft sent a copyright "strike notice" to YouTube objecting to Valnet's unauthorized use of Andrianne Lewis in the "Extremely Big Body Parts on People" video. | Barcroft Decl. ¶ 20. |
| | 15. Because the strike notice identified "TheRichest" channel, it affected the entirety of the channel, not just the specific video identified therein. | Barcroft Decl. ¶ 21. |
| | 16. Upon receipt of Barcroft's strike notice, which affected Valnet's "TheRichest" channel as a whole, Valnet reached out to Barcroft in an effort to resolve Barcroft's infringement claim. | Barcroft Decl. ¶ 24-26. |
| | 17. At the time Barcroft sent the strike notice, it was primarily aware of the "Extremely Big Body Parts on People" video, | Barcroft Decl. ¶ 22-23. |

4
STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| | which did not include any images alleged to be owned by Plaintiff. | |
| 18. | Barcroft was unaware that Valnet had used any content allegedly owned by Plaintiff. | Barcroft Decl. ¶ 23, 33. |
| 19. | On contacting Barcroft in response to the strike notice, Valnet indicated a desire to reach a settlement of the infringements, as well as a desire to enter into a licensing agreement that would allow Valnet access to – and use of – Barcroft's media library. | Barcroft Decl. ¶ 29. |
| 20. | The ensuing discussions culminated in Barcroft and Valnet entering into an agreement allowing for Valnet to publish Barcroft's content on its channels, under the certain terms contained in the license agreement. | Barcroft Decl. ¶ 32, 46. |
| 21. | At the time, Valnet was not a client or licensee of Barcroft and, therefore, did not have Barcroft's permission to use any of its photographs, images or videos, including the "longest tongue" images. | Barcroft Decl. ¶ 18-19. |
| 22. | Negotiations between Barcroft and Valnet resulted in the parties entering into a settlement agreement for the known infringements . | Barcroft Decl. ¶ 31. |
| 23. | The negotiations between Barcroft and Valnet did not include or contemplate any discussion of works owned by | Barcroft Decl. ¶ 33, 42, 48. |

| | | |
|---|---|---|
| | Plaintiff. | |
| 24. | Had Barcroft known that Valnet sought to include Plaintiff's images in the settlement agreement, Barcroft would have affirmatively notified Valnet that it did not have the authority to license those images in the United States. | Barcroft Decl. ¶ 43. |
| 25. | The negotiations between Barcroft and Valnet also led to the parties entering into an agreement for Valnet to access Barcroft's media library on a go-forward basis. | Barcroft Decl. ¶ 32, 37. |
| 26. | In negotiating the go-forward agreement, Barcroft specifically notified Valnet that the agreement would only cover content for which Barcroft had world-wide distribution rights, and only for images obtained from Barcroft's media library via download. | Barcroft Decl. ¶ 46-48. |
| 27. | The go-forward agreement between Barcroft, as Licensor, and Valnet, as Licensee, was not signed and did not become effective until December 14, 2015. | Barcroft Decl. ¶ 37. |
| 28. | It was not until issuance of the license agreement that Valnet was given a user ID and password to access Barcroft's media library, which is the only way for a client to download content from Barcroft. | Barcroft Decl. ¶ 39. |
| 29. | Any Barcroft-owned content that | Barcroft Decl. ¶ 40. |

| | | |
|---|---|---|
| | was not obtained by Valnet by proper download was and is not authorized by Barcroft. | |
| 30. | It was not until after the settlement agreement had been reached that Barcroft created what it believed to be a final list of all images used by Valnet, which revealed images belonging to Plaintiff. | Barcroft Decl. ¶ 49-51. |
| 31. | The negotiations between Barcroft and Valnet never included any discussion of content owned by Plaintiff. | Barcroft Decl. ¶ 33. |
| 32. | The video that caused Barcroft to send a notice of copyright infringement to YouTube was a video posted by Valnet entitled "Extremely Big Body Parts on People". | Barcroft Decl. ¶ 34. |
| 33. | Plaintiff does not claim that any content allegedly owned by him was displayed in the "Extremely Big Body Parts on People" video. | Barcroft Decl. at ¶ 35. |
| 34. | None of the images identified in the FAC were downloaded by Valnet from Barcroft's media library. | Barcroft Decl. ¶ 56. |
| 35. | Valnet never obtained any of Plaintiff's images from Barcroft. | Barcroft Decl. ¶ 57. |
| 36. | Barcroft was unaware that any of Plaintiff's images were purportedly included in any video until after Valnet and Barcroft entered into a prospective license agreement for Barcroft's owned | Barcroft Decl. ¶ 42-43, 49-51. |

| | | |
|---|---|---|
| | content. | |
| 37. | Barcroft never identified or communicated to Valnet that the license agreement included any of Plaintiff's images. | Barcroft Decl. ¶ 42. |
| 38. | At the time of Valnet's alleged infringement of Plaintiff's images, Valnet did not have access to Barcroft's library. | Barcroft Decl. ¶ 36-37. |
| 39. | Valnet did not have any access to Barcroft's media library until on or after December 14, 2015, the day that the parties entered into the licensing agreement. | Barcroft Decl. ¶ 37. |
| 40. | A review of Barcroft's records shows that none of the images identified in the FAC were downloaded by Valnet from Barcroft's media library or otherwise obtained from Barcroft. | Barcroft Decl. ¶ 56. |
| 41. | Barcroft did not "assist" Valnet in obtaining Plaintiff's images – either before or after the date of Valnet's alleged direct infringement of Plaintiff's images. | Barcroft Decl. ¶ 58. |
| 42. | Barcroft does not currently know the source from which Plaintiff's images were obtained by Valnet. | Barcroft Decl. ¶ 59. |
| 43. | Barcroft has never had any rights or privileges with respect to Valnet's websites or YouTube channels such that it could post, edit, remove, control or block access to any content, either before or after publication. | Barcroft Decl. ¶ 64-78. |

| | | |
|---|---|---|
| 44. | Following the entry of the licensing agreement with Valnet, Barcroft's accounting department performed an allocation against data provided by other staff for the purpose of remitting to its contributors their respective shares of the license fee from Valnet. In this process Barcroft allocated and remitted £514.31 (approx. $600) to Plaintiff who rejected this payment. | Barcroft Decl. ¶50-53. |
| 45. | The £514.31 represents the only money which Barcroft could arguably be holding which could belong to Plaintiff. | Barcroft Decl. ¶54. |
| 46. | Plaintiff and Barcroft each create content for distribution of the internet. | Barcroft Decl. ¶82. |
| 47. | While Plaintiff and Barcroft have collaborated on a few projects, and Barcroft has agreed to distribute some of Plaintiff's images from its platforms, Barcroft and Plaintiff are otherwise competitors. | Barcroft Decl. ¶83. |
| 48. | Barcroft has never agreed in writing to be a fiduciary of Plaintiff. | Barcroft Decl. ¶84-85. |
| 49. | Barcroft has never agreed orally to be a fiduciary of Plaintiff. | Barcroft Decl. ¶85. |
| 50. | Plaintiff has presented no proof to support his allegation that Valnet obtained the images identified in the FAC directly from Barcroft. | Barcroft Decl. ¶89. |
| 51. | Plaintiff has presented no proof to support his allegation that Valnet | Barcroft Decl. ¶89. |

| | | |
|---|---|---|
| | obtained the images identified in the FAC with the assistance of Barcroft. | |
| 52. | Plaintiff alleges that the direct infringement by Valnet of the "world's smallest mom" images occurred on February 27, 2015. | FAC ¶63. |
| 53. | Plaintiff does not provide the uniform resource locator ("URL") at which the infringement was allegedly observed. | FAC ¶63; Barcroft Decl. ¶91. |
| 54. | Despite Plaintiff's omission, the video at issue is located at the following URL: https://www.youtube.com/watch?v=Sz6yerNSFxg . | Barcroft Decl. ¶ 92. |
| 55. | A review of the video located at https://www.youtube.com/watch?v=Sz6yerNSFxg shows that none of the images identified in the FAC as exhibits "2" or "3" appear in the video. | Barcroft Decl. ¶94; https://www.youtube.com/watch?v=Sz6yerNSFxg . |
| 56. | There is nothing in the commentary or history suggesting that the video was edited or modified since the stated initial date of posting. | Barcroft Decl. ¶95. |
| 57. | A review of the video located at https://www.youtube.com/watch?v=Sz6yerNSFxg shows that the video features ten (10) different individuals, using approximately thirty nine (39) unique photographs in the video. | Barcroft Decl. ¶97-99. |

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| 58. | Of the 39 images used in the video, Plaintiff claims to own four (4). | Barcroft Decl. ¶99; Exhs. "2" and "3" to FAC. |
| 59. | Of the 39 images used in the video, Barcroft ultimately discovered that it owns seven (7). | Barcroft Decl. ¶ 100. |
| 60. | The settlement agreement between Barcroft and Valnet does not purport to license any images contained in the "10 Oddest Mothers In the World" video, because Barcroft was unaware of those infringements at the time. | Barcroft Decl. ¶100. |
| 61. | The settlement agreement between Barcroft and Valnet makes no mention of that video or Plaintiff's "world's smallest mom" images. | Barcroft Decl. ¶100. |
| 62. | Plaintiff did not annex a copy of a "screen grab" or other evidence to the FAC to show that Plaintiff's "world's smallest mom" images were, in fact, displayed in the video at any time. | Barcroft Decl. ¶91. |
| 63. | There are no images identified in the FAC currently appearing in the video located at https://www.youtube.com/watch?v=Sz6yerNSFxg . | Barcroft Decl. ¶94. |
| 64. | Regardless of Plaintiff's lack of proof, the evidence shows that Valnet's alleged posting of Plaintiff's "world's smallest mom" images preceded Valnet's relationship with Barcroft by some ten (10) months. | Barcroft Decl. ¶93; FAC ¶ 63. |

11
STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| 65. | Plaintiff alleges that the direct infringement by Valnet of the "Barb Guerra" images occurred at an unspecified date in 2015. | Barcroft Decl. ¶105; FAC ¶74. |
| 66. | Plaintiff does not provide the URL at which the infringement by Valnet was allegedly observed. | Barcroft Decl. ¶105. |
| 67. | Despite Plaintiff's omission, the video at issue is located at the following URL: https://www.youtube.com/watch?v=Mi2swjZBr48. | Barcroft Decl. ¶107. |
| 68. | Plaintiff did not annex a "screen grab" or other evidence to the FAC to show that Plaintiff's "Barb Guerra" images were, in fact, displayed in the video at any time. | Barcroft Decl. ¶109. |
| 69. | The information posted at the foregoing URL indicates that the video was posted to the RICHEST YouTube channel on October 27, 2015. | Barcroft Decl. ¶108. |
| 70. | Regardless of Plaintiff's lack of proof, the evidence shows that the "Barb Guerra" images were displayed by Valnet – if at all – more than two (2) months before Valnet had any relationship with Barcroft. | Barcroft Decl. ¶118. |
| 71. | Plaintiff has not shown that the "Barb Guerra" images annexed to the FAC as Exhibit "7" to the FAC were actually used by Valnet. | Barcroft Decl. ¶119. |

12
STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| 72. | Even if Plaintiff had shown that the "Barb Guerra" images annexed to the FAC as Exhibit "7" to the FAC were actually used by Valnet, the date of Valnet's posting precedes Valnet's relationship with Barcroft. | Barcroft Decl. ¶108, 118. |
| 73. | The "10 Most Unusual Bodybuilders in the World" video features stories on ten (10) different individuals. | Barcroft Decl. ¶ 112. |
| 74. | There are approximately one hundred fifty (150) individual photos featured in the "10 Most Unusual Bodybuilders in the World" video. | Barcroft Decl. ¶ 113. |
| 75. | Plaintiff claims to own one (1) of the images used by Valnet in the "10 Most Unusual Bodybuilders in the World" video. | Exhibit "7" to the FAC. |
| 76. | Barcroft owns no less than five (5) photos that were featured in "10 Most Unusual Bodybuilders in the World" video. | Barcroft Decl. ¶ 114. |
| 77. | Barcroft did not purport to license Plaintiff's "Barb Guerra" image to Valnet for use in the "10 Most Unusual Bodybuilders in the World" video, nor did it purport to license the rights to use any of the other 144 images used in the video. | Barcroft Decl. ¶ 115. |
| 78. | The "10 Most Unusual Bodybuilders in the World" video contains attributions to approximately seventeen third- | Barcroft Decl. ¶ 117. |

| | | |
|---|---|---|
| | party sources besides Barcroft – none of which are Plaintiff. | |
| 79. | Plaintiff has presented no proof to establish the existence of a fiduciary relationship between himself and Barcroft. | Barcroft Decl. ¶ 81-86. |
| 80. | Plaintiff has failed to plead that his non-federal claims meet the monetary threshold to establish jurisdiction in this Court. | FAC at ¶¶ 130-140 |

| | **CONCLUSIONS OF LAW** | **SUPPORTING LAW** |
|---|---|---|
| 81. | Contributory copyright infringement is "a form of secondary liability with roots in the tort-law concepts of enterprise liability and imputed intent." | *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 670 (9th Cir. 2017). |
| 82. | To plead a claim for contributory copyright infringement, a plaintiff must show that the defendant had knowledge of the directly infringing activity and engaged in conduct to induce, cause or materially contribute to that infringing conduct. | *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). |
| 83. | Contributory liability will not attach unless the defendant "engages in personal conduct that encourages or assists the infringement." | *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001). |
| 84. | This Court has found that Valnet's alleged acts of direct infringement occurred before Barcroft entered into the retroactive license with Valnet in | Dkt. 38 at p. 3. |

| | | |
|---|---|---|
| | December of 2015. | |
| 85. | This Court held that "[t]he first act of infringement in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement." | Dkt. 38 at p. 3 citing *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 701 (9th Cir. 2008) |
| 86. | This Court held that Plaintiff's failure or inability to prove that Barcroft took an affirmative action to encourage Valnet's initial infringement or that there was a separate and distinct infringement by Valnet that occurred after Barcroft and Valnet entered into the retroactive license would be fatal to Plaintiff's contributory infringement claim | Dkt. 38 at p. 3. |
| 87. | Plaintiff has failed to show that Barcroft took any affirmative action to encourage Valnet's initial infringement or that there was in fact separate and distinct infringement by Valnet that occurred after Barcroft and Valnet entered into the retroactive license | Dkt. 38 at p. 3; *Poof*, 528 F.3d 696, 701 (9th Cir. 2008); *Napster*, 239 F.3d 1004, 1019 (9th Cir. 2001) |
| 88. | Whereas contributory infringement is based on tort-law principles of enterprise liability and imputed intent, vicarious infringement finds its roots in the agency principles of respondeat superior. | *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 261-262 (9th Cir. 1996). |
| 89. | To state a claim for vicarious copyright infringement, a plaintiff must allege that the | *Ellison*, 357 F.3d at 1078; *Napster*, 239 F.3d at 1022. |

| | | |
|---|---|---|
| | defendant has: (1) the right and ability to supervise the infringing conduct; and (2) a direct financial interest in the infringing activity. | |
| 90. | "One ... infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." | *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, 545 U.S. 913, 930, 125 S.Ct. 2764 |
| 91. | Plaintiff is required to show more than just the existence of a mere contractual relationship in order to establish the requisite degree of oversight and control to establish a claim for vicarious infringement. | *Perfect 10, Inc. v. Visa Int'l Servs. Ass'n*, 494 F.3d 788, 800 (9th Cir. 2007). |
| 92. | Plaintiff has failed to show that Barcroft had any – let alone the requisite – degree of oversight or control over Valnet's websites or YouTube channels sufficient to prevail on his claim of vicarious copyright infringement. | *Perfect 10, Inc. v. Visa Int'l Servs. Ass'n*, 494 F.3d 788, 800 (9th Cir. 2007). |
| 93. | In order to plead a claim for breach of fiduciary duty under California law, Plaintiff must allege (1) the existence of a fiduciary relationship giving rise to a fiduciary duty, (2) breach of that duty, and (3) damage proximately caused by the breach. | *Negrete v. Fidelity and Guar. Life Ins. Co.,* 444 F.Supp.3d 998, 1003 (C.D. Cal. 2006) citing *Pierce v. Lyman*, 1 Cal.App.4th 1093, 1101, 3 Cal.Rptr.2d 236 (1991). |
| 94. | Under California law, a fiduciary relationship arises "between parties to a transaction wherein one of the parties is ... duty bound to act with the utmost | *Altman v. PNC Mortgage*, 850 F.Supp.2d 1057, 1074-1075 (E.D. Cal. 2012) citing *Herbert v. Lankershim*, Cal.2d 409, 483, 71 P.2d 220 (1937). |

| | | |
|---|---|---|
| | good faith for the benefit of the other party." | |
| 95. | To be charged with a fiduciary obligation, a person must knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law. | *City of Hope Nat. Medical Center v. Genentech, Inc.*, 43 Cal.4th 375, 385, 75 Cal.Rptr.3d 333, 181 P.3d 142 (2008). |
| 96. | California courts have not extended the 'special relationship' doctrine to include ordinary commercial contractual relationships. | *Martin v. U–Haul Co. Of Fresno*, 204 Cal.App.3d 396, 412, 251 Cal.Rptr. 17 (1988). |
| 97. | Plaintiff has failed to plead the existence of a fiduciary relationship between himself and Barcroft insofar as he has done nothing more than plead the existence of an oral understanding of an "ordinary commercial contractual relationship" between himself and Barcroft | *Martin v. U–Haul Co. Of Fresno*, 204 Cal.App.3d 396, 412, 251 Cal.Rptr. 17 (1988). |
| 98. | Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute. | *Willy v. Coastal Corp.*, 503 U.S. 131, 136–137, 112 S.Ct. 1076, 1080, 117 L.Ed.2d 280 (1992); *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). |
| 99. | Subject matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived. | *United States v. Cotton*, 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). |
| 100. | The subject matter jurisdiction of federal courts arises in only two (2) instances. | 28 U.S.C. § 1331; *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513, 126 S.Ct. 1235, 163 L.Ed. 1097 (2006); 28 U.S.C. § 1332. |

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| 101. | A federal district court has matter jurisdiction when a plaintiff pleads a colorable claim "arising under" the Constitution or laws of the United States. | 28 U.S.C. § 1331; *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513, 126 S.Ct. 1235, 163 L.Ed. 1097 (2006) |
| 102. | A federal district court has "diversity jurisdiction only when a plaintiff presents a claim between parties of diverse citizenship <u>and</u> the amount at issue exceeds the jurisdictional threshold, currently $75,000. | 28 U.S.C. § 1332. |
| 103. | The state-law claims set forth in the Complaint herein are based on diversity of citizenship. | FAC ¶ 130-140. |
| 104. | In a diversity case, the burden is on Plaintiff to establish that the amount of the claim exceeds $75,000.00. | *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182–183, 56 S.Ct. 780, 782, 80 L.Ed. 1135 (1936). |
| 105. | Plaintiff has failed to establish that this Court has subject matter jurisdiction over his non-federal insofar as there is no allegation that the value of the claim(s) meets or exceeds the monetary threshold. | 28 U.S.C. § 1332; *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); FAC ¶ 130-140. |

.

**SANDERS LAW PLLC**

By: */s/ Craig B. Sanders*
Craig B. Sanders
Attorneys for Plaintiff

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT